IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| JEAN LaROCQUE, by and through her appointed Power of Attorney, DEIDRE SPANG, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> TRS RECOVERY SERVICES, INC. <br> and <br> TELECHECK SERVICES INC., <br><br> Defendants. | Civil Action No. <br><br><br> CLASS ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES <br><br> JURY TRIAL DEMANDED |

## COMPLAINT - CLASS ACTION

### I. Preliminary Statement

1. This is a consumer class action brought on behalf of consumers subjected to Defendants' widespread violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p ("FDCPA"), Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA"), the Maine Fair Debt Collection Practices Act, 32 M.R.S.A. §§ 11001-11054 ("MFDCPA"), and the Maine Unfair Trade Practices Act, 5 M.R.S.A. §§ 205A-214 ("MUTPA"). Defendants violated these laws by engaging in abusive, deceptive and unfair collection and credit reporting practices and by unlawfully taking from Plaintiff, and similarly situated consumers, unauthorized fees.

### II. Jurisdiction and Venue

2. Jurisdiction of this Court arises under 15 U.S.C. § 1681p, 15 U.S.C. § 1692k and 28 U.S.C. § 1331, and supplemental jurisdiction exists for the state law claims under 28 U.S.C. § 1367.

3. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

### III.   Parties

4.      Plaintiff Jean LaRocque ("Mrs. LaRocque") is an adult individual who resides at 122 Mills Road, Kennebunkport, ME 04046.

5.      Deidre J. Spang ("Mrs. Spang") is an adult individual who resides at 120 Mills Road, Kennebunkport, ME 04046 and is both daughter of and power of attorney for Plaintiff Mrs. LaRocque.

6.      Defendant TRS Recovery Services, Inc. ("TRS") is a business entity regularly engaged in the business of collecting debts in this State with its principal place of business located at 6200 South Quebec Street, Greenwood Village, CO, 80111-4729.

7.      Defendant TeleCheck Services, Inc. ("TeleCheck") is a business entity regularly engaged in the business of collecting debts in this State with its principal place of business located at 6200 South Quebec Street, Greenwood Village, CO, 80111-4729.

8.      The principal purpose of Defendants is the collection of debts using the mails and telephone, and Defendants regularly attempt to collect alleged debts originally due to another.

9.      Defendant TeleCheck also holds itself out as and operates as a "consumer reporting agency" regulated by the FCRA.

10.     Defendants work in concert with each other in connection with the collection of alleged debts originally due to another and correspond with consumers, including Plaintiff, with letterhead that, on occasion, identifies the sender of the correspondence as both TeleCheck and TRS in the same communication.  Moreover, TeleCheck uses its custom TeleCheck-marked envelopes and return address to mail dunning letters and other correspondence for TRS.

## IV. Factual Allegations

11. On March 2, 2010, Mrs. LaRocque, a senior citizen, went to her local Rite Aid pharmacy in Kennebunk, Maine, to purchase her prescription medicine.

12. Mrs. LaRocque paid for the medicine with check number 289, drawn from her York County Federal Credit Union (hereafter "bank") checking account.

13. At the time of the transaction, Mrs. LaRocque had well more than the $30.34 required to satisfy her obligation to Rite Aid.

14. Check number 289 cleared Mrs. LaRocque's account on March 4, 2010.

15. Mrs. LaRocque's bank statement indicated that Ride Aid was the recipient of $30.34 as a result of check number 289.

16. Based upon information and belief, Rite Aid contracts with Defendant TeleCheck, a business that provides check acceptance, check processing and risk-analysis services to various merchants, including Rite Aid.

17. Upon payment by check at Rite Aid, Mrs. LaRocque's check was scanned for its routing and account number and transmitted to TeleCheck, in order for it to perform its check processing and analysis.

18. Upon information and belief, check processing and analysis requires a determination from TeleCheck regarding whether the check should be accepted based upon a consumer's check writing history and current availability of funds.

19. Despite the foregoing, on March 15, 2010, Defendants TeleCheck and TRS sent Mrs. LaRocque a collection letter for the March 2, 2010, $30.34 transaction with Rite Aid. The March 15, 2010 dunning letter advised that TeleCheck had "purchased" the alleged Rite Aid check and debt and "turned that debt over" to its "affiliate" TRS for collection.  A true and

correct copy of the March 15, 2010 dunning letter from Defendants to Mrs. LaRocque is attached hereto as Exhibit A.

20. The March 15, 2010 dunning letter was the initial communication by Defendants to Plaintiff regarding the alleged debt, and Defendants provided no subsequent communication to Plaintiff within five days of the March 15, 2010 initial communication.

21. The back of the March 15, 2010 dunning letter provided a "validation notice," which is required by FDCPA section 1692g and MFDCPA section 11014(1). It stated: "Unless you notify TRS Recovery Services, Inc. within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, TRS Recovery Services, Inc. will assume this debt is valid. If you notify TRS Recovery Services, Inc. in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, TRS Recovery Services, Inc. will obtain verification of the debt and mail you a copy of such verification. If you request TRS Recovery Services, Inc. in writing within 30 days after receiving this notice, TRS Recovery Services, Inc. will provide you with the name and address of the original creditor, if different from the current creditor. This is an attempt to collect a debt. Any information obtained will be used for that purpose. This is a communication from a debt collector."

22. The March 15, 2010 dunning letter demanded the $30.34 that had already been taken from Mrs. LaRocque's account as well as a $25.00 "returned check fee."

23. The March 15, 2010 dunning letter explained that Defendants "will create a paper draft" for $25.00 "and submit it to your bank" in order to help themselves to the alleged fee.

24. Defendants stated in the March 15, 2010 dunning letter that TRS had already taken an additional $30.34 from Mrs. LaRocque's checking account because "we have

resubmitted this check to your bank for payment."

25.  The March 15, 2010 dunning letter had a return address of 5251 Westheimer, Houston, Texas, a corporate address for Defendants TeleCheck and TRS.

26.  The March 15, 2010 dunning letter also had a privacy notice on the back from Defendant TeleCheck.

27.  The March 15, 2010 dunning letter was a form dunning letter.

28.  Defendants send thousands of dunning letters to consumers substantially similar in form to the March 15, 2010 dunning letter.

29.  On March 16, 2010, Mrs. LaRocque's checking account reflected a debit of $30.34 for check 289 *for a second time* since Defendants resubmitted Mrs. LaRocque's check to Rite Aid to her bank.

30.  The alleged recipient of the $30.34, deducted for a second time from Mrs. LaRocque's checking account, was Ride Aid according to Mrs. LaRocque's bank records.

31.  Mrs. LaRocque did not give her permission, nor did she have any knowledge, that this March 16, 2010 debit would be occurring.

32.  Mrs. LaRocque did not give her permission for, nor did she have any knowledge of, any additional fee, including the above-referenced $25.00 fee, to be taken from her checking account.

33.  TeleCheck employs and/or works in concert with its corporate affiliate TRS to collect funds from consumers who have allegedly failed to make payment by check because of allegedly non-sufficient funds.

34.  As they did in the case of Plaintiff, and through self-help, Defendants also take a "return check fee" from consumers for providing this service by "creating" a draft in the amount

of the fee and submitting it to the consumer's bank despite no contractual or legal authority to do so, or to recover such a fee by any other means.

35. On March 19, 2010, in response to Defendants' correspondence, Mrs. Spang called Defendants on Mrs. LaRocque's behalf to dispute the charges to her account, but was unable to reach a representative.

36. Accordingly, on March 20, 2010, Mrs. Spang disputed the charges in writing on Mrs. LaRocque's behalf and sent to Defendants a copy of Mrs. LaRocque's bank account statement showing that not only did she have sufficient funds at the time of the March 2, 2010 Rite Aid check, but also, that the check for $30.34 had already been paid to Rite Aid on March 4, 2010. Mrs. Spang also requested that Defendants correct their records, return her funds, and remove any holds that had been placed on Mrs. LaRocque's ability to write checks.

37. In a letter dated March 24, 2010, printed on shared TRS/TeleCheck letterhead, Defendants advised Mrs. LaRocque that her bank had returned the Rite Aid check because there were insufficient funds to cover the draft, which was untrue.

38. The March 24, 2010 correspondence also purported to include Mrs. LaRocque's "file" and "report" under the FCRA. A true and correct copy of the March 24, 2010 file and report is attached hereto as Exhibit B.

39. The March 24, 2010 "file" and "report" inaccurately listed that Mrs. LaRocque owed a $25.00 "fee" in connection with a Rite Aid check.

40. Defendants as a matter of policy and practice included in the consumer report the $25.00 fee that they created and charged knowing that said fee is unauthorized, unlawful, inaccurate and negative or adverse in nature.

41. The March 24, 2010 "file" and "report" provided no toll-free telephone number

where Plaintiff could call to dispute inaccurate information in her file and report, or any proper instructions for disputing inaccuracies on Defendants' files.

42.     The March 24, 2010 "file" and "report" stated: "The report listed below reflects all negative information listed in your file. If you have been declined by TeleCheck, the information contained in this report is, in most cases, the cause of that decline." The March 24, 2010 "file" and "report," by its own admission, included only "negative" information relating to Plaintiff, not all of the information that Defendants had on file about Plaintiff.

43.     The March 24, 2010 "file" and "report" refused to waive the $25.00 fee, providing: "In regards to your request for the return check fee to be waived, that request will not be honored. TeleCheck does not waive return check fee charges due to bank errors. Please contact your financial institution for waiver or refund of fees."

44.     Plaintiff's bank, however, had cleared the initial check 289 on March 4, 2010. Moreover, her bank had imposed and collected no fee, and has no such $25.00 fee. Moreover, Defendants did not claim that they were collecting on behalf of her bank.

45.     Furthermore, upon information and belief, Rite Aid neither had, nor later imposed or tried to collect such a $25.00 fee.

46.     Only Defendants had identified and sought to collect any $25.00 fee.

47.     On March 24, 2010, TRS called Mrs. LaRocque and demanded the $25.00 fee regardless of whether the initial check had sufficient funds. Mrs. LaRocque was upset, nervous, anxious and worried by the phone call.

48.     On March 25, 2010, Mrs. Spang on Mrs. LaRocque's behalf sent to TRS a copy of Mrs. LaRocque's bank account statement showing that the $30.34 owed to Rite Aid had been paid twice. She also disputed the validity of the "debt," sought verification of the debt within 30

days of Defendants' initial communication (as is her right under FDCPA section 1692g and MFDCPA section 11014(2)), and requested that any collection calls stop.

49.   This March 25, 2010 letter was received by Defendants on March 29, 2010.

50.   Not satisfied with charging Mrs. LaRocque twice for the original transaction, Defendants prepared and sent to Mrs. LaRocque another dunning latter dated March 26, 2010, providing that she still owed a $25.00 returned check fee.  A true and correct copy of the March 26, 2010 dunning letter is attached hereto as Exhibit C.

51.   In the March 26, 2010 dunning letter, Defendants described the process for obtaining this fee from Mrs. LaRocque:  they would "create a paper draft" based on the account and routing number lifted from her original check to Rite Aid and "present it" to her bank for payment.

52.   On April 2, 2010, and according to Defendants' usual policy and practice, a $25.00 fabricated and unauthorized "draft" numbered 9999 cleared Mrs. LaRocque's checking account.  This was done without legal or contractual justification, and without the consent, approval or authorization of Mrs. LaRocque.

53.   Defendants made no further contact with Plaintiff and have to date refused to return the unauthorized moneys that they took from her checking account despite her requests.

54.   Defendants, consistent with their policy and practice, also never answered Plaintiff's March 25, 2010 written request for validation of the alleged debt, even though they received such request on March 29, 2010.

55.   Defendants' actions as described above are consistent with their standard policies and practices for collecting alleged consumer "debts" associated with allegedly bounced checks, and for helping themselves to additional unauthorized and unlawful "fees" in the amount of

$25.00 or more.

56.    Defendants have received numerous disputes concerning the above-described and unlawful practices, but have failed to take corrective action.

57.    At all times pertinent hereto, Defendants were acting in concert with each other and by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

58.    The acts alleged against the Defendants were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management and operation of Defendants' businesses.

59.    Various persons not named as Defendants herein may have participated as co-conspirators in the violations alleged and may have performed acts and made statements in furtherance thereof.

60.    Each Defendant acted as the principal, agent, or joint venturer of, or for, other Defendants with respect to the acts, violations, and common course of conduct alleged herein.

## V.    Class Allegations

61.    Plaintiff brings this action individually and as a class action, pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, on behalf of the following Classes:

    (a)    With respect to the MUTPA: All natural persons in the State of Maine from whom one or both Defendants have taken a $25.00 returned check fee by way of draft, or the same type of fee in any other amount, beginning six years prior to the filing of this action and up through the

        date of judgment.

(b)     With respect to the FDCPA: All natural persons in the United States from whom one or both Defendants have taken a $25.00 returned check fee by way of draft, or the same type of fee in any other amount, beginning one year prior to the filing of this action and up through the date of judgment.

(c)     With respect to the FDCPA and MFDCPA: All natural persons in the State of Maine to whom one or both Defendants sent any letter with a section substantially similar in form to the Returned Check Fee Due section in Exhibit C to Plaintiff's Complaint, beginning one year prior to the filing of this action and up through the date of judgment.

(d)     With respect to the FDCPA and MFDCPA: All natural persons in the State of Maine to whom one or both Defendants sent an initial communication substantially similar in form to Exhibit A to Plaintiff's Complaint, beginning one year prior to the filing of this action and up through the date of judgment.

(e)     With respect to the FDCPA and MFDCPA: All natural persons in the State of Maine to whom one or both Defendants sent an initial communication substantially similar in form to Exhibit A to Plaintiff's Complaint and from whom one or both Defendants collected funds in any amount within 30 days of the letter by resubmitting to such person's bank or financial institution any allegedly dishonored check, beginning one year prior to the filing of this action and up through the date of judgment.

(f)     With respect to the FCRA: All natural persons in the United States to

    whom TeleCheck sent a consumer file substantially similar in form to Exhibit B to Plaintiff's Complaint, beginning two years prior to the filing of this action and up through the date of judgment.

 (g) With respect to the FCRA: All natural persons in the State of Maine for whom TeleCheck maintained a consumer report substantially similar in form to Exhibit B to Plaintiff's Complaint which listed any "amount due" for an alleged return check "fee" allegedly "reported by Rite Aid" beginning two years prior to the filing of this action and up through the date of judgment.

 (h) The Classes do not include Defendants, or Defendants' officers, directors, agents, employees, or counsel; Class Counsel, employees of Class Counsel's firm, or Class Counsel's immediate family members; or the presiding Judge and Magistrate Judge and their immediate family members.

62. The Classes are so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to Defendants, Plaintiff avers upon information and belief that Defendants handle tens of thousands of consumer check authorizations and returned check fee assessments every year. Accordingly, Plaintiff estimates that the class size numbers in the thousands.

63. There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. The principal question is whether the Defendants violated the FDCPA, FCRA, MFDCPA, and MUTPA by:

 (a) improperly imposing their own arbitrary fee in the collection of alleged

        debts;

  (b)    using improper and deceptive means in collecting alleged debts;

  (c)    making false statements in their form letters concerning the alleged debts;

  (d)    prematurely cutting off the rights of consumers to dispute the alleged debts;

  (e)    falsely reporting credit information about consumers with the alleged debts; and

  (f)    undermining the ability of consumers to dispute the accuracy of the alleged debts.

64.    Plaintiff's claims are typical of the claims of the Classes, which all arise from the same operative facts and are based on the same legal theories.

65.    Mrs. LaRocque and her power of attorney Mrs. Spang ("Representative Plaintiff") will fairly and adequately protect the interests of the Classes. Representative Plaintiff is committed to vigorously litigating this matter and has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Representative Plaintiff nor her counsel has any interest which might cause them not to vigorously pursue this claim.

66.    This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Classes, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

67. Whether Defendants unlawfully charged excess fees and made false statements and reports in the collection and reporting of a debt from the Representative Plaintiff and the Classes can be easily determined by a ministerial inspection of Defendants' business records.

68. A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecution of separate claims against Defendants is slight because the unlawful charges are relatively small and the maximum statutory damages are limited to $1,000.00 under the FDCPA, MFDCPA and FCRA. Management of the Classes' claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class members may be obtained from Defendants' records.

### **Count One - FDCPA**

69. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

70. Defendants are "debt collectors" as defined by section 1692a(6) of the FDCPA.

71. Plaintiff is a "consumer" as defined by section 1692a(3) of the FDCPA.

72. Defendants violated the FDCPA. Defendants' violations include violations of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(8), 1692e(10), 1692f(1), 1692f(6)(A) and 1692g as evidenced by the following conduct:

    (a) Falsely representing the amount, character or legal status of the debt;

    (b) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false;

    (c) Collection of an amount from the consumer that is not authorized by agreement or permitted by law;

      (d)      Taking or threatening to take non-judicial action to take property from the consumer which is not subject to a security interest;

      (e)      Failing to validate a disputed debt; and

      (f)      Otherwise using false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect a debt from the consumer.

73. Defendants' acts as described above were done with intentional and negligent disregard for Plaintiff's rights under the law and with the purpose of coercing Plaintiff to pay monies not truly owed.

74. As a result of the above violations of the FDCPA, Defendants are liable to Plaintiff in the sum of Plaintiff's statutory damages, actual damages and attorney's fees and costs.

### Count Two - Violations of the Maine Fair Debt Collection Practices Act

75. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

76. Defendants are "debt collectors" as defined by section 11002(6) of the MFDCPA.

77. Plaintiff is a "consumer" as defined by section 11002(3) of the MFDCPA.

78. The above contacts with Plaintiff by Defendants are "communications" relating to a "debt" as defined by sections 11002(1) and 11002(5) of the MFDCPA.

79. Defendants violated the MFDCPA. Defendants' violations include, but are not limited to, violations of 32 M.R.S.A. §§ 11013(2), 11013(2)(B)(1), 11013(2)(D), 11013(2)(E), 11013(2)(H), 11013(2)(J), 11013(3)(A), 11013(3)(F)(1) and 11014(2) as evidenced by the following conduct:

(a) Using false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect a debt from the consumer;

(b) Falsely representing the amount, character or legal status of the debt;

(c) Falsely representing that nonpayment of any debt will result in the seizure or attachment of any property when such an action would be unlawful;

(d) Falsely threatening to take an action that may not be legally taken;

(e) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false;

(f) Unfairly and unconscionably collecting fees not authorized under agreement or law;

(g) Taking or threatening to take non-judicial action to take property from the consumer which is not subject to a security interest;

(h) Failing to validate a disputed debt; and

(i) Otherwise using false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect a debt from a consumer.

80. Defendants' acts as described above were done intentional and negligent disregard for Plaintiff's rights under the law and with the purpose of coercing Plaintiff to pay monies not truly owed.

81. As a result of the above violations of the MFDCPA, Defendants are liable to Plaintiff in the sum of Plaintiff's statutory damages, actual damages and attorney's fees and costs.

**Count Three - Violations of the Maine Unfair Trade Practices Act**

82. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

83. Any alleged debts at issue arose out of a transaction which was primarily for personal, family or household purposes.

84. Defendants engaged in "trade" and "commerce" as defined by section 206(3) of the MUTPA.

85. Plaintiff is a "person" as defined by section 206(2) of the MUTPA.

86. Defendants violated the section 207(2) of the MUTPA by engaging in the following unfair and deceptive acts or practices:

    (a) Falsely imposing unauthorized fees in reaction to allegedly bounced checks;

    (b) Creating unauthorized electronic drafts in order to collect unauthorized funds;

    (c) Falsely threatening to take and in fact taking an action that may not be legally taken;

    (d) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false; and

    (e) Unfairly and unconscionably collecting fees not authorized under agreement or law.

87. Defendants' acts as alleged constitute unfair or deceptive acts or practices in the conduct of any trade or commerce and multiple, separate violations of Maine's Unfair Trade Practices Act.

88. Defendants' acts as described above are material misrepresentations advanced to mislead Plaintiff in a manner that Plaintiff could not reasonably avoid reliance on such misrepresentations, leading to Plaintiff's loss of money or real or personal property.

89. As a result of the above violations of the MUTPA, Plaintiff has suffered substantial injury entitling Plaintiff to an award of: injunctive relief; affirmative changes to the Defendants' practices and procedures; equitable relief; restitution; money damages and attorney's fees and costs.

### **Count Four - FCRA**

90. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

91. Defendants are a "person" and "consumer reporting agency" as those terms are defined by sections 1681a(b) and (f) of the FCRA.

92. Plaintiff is a "consumer" as that term is defined by section 1681a(c) of the FCRA.

93. The above-mentioned file and report were "consumer reports" as that term is defined by section 1681a(d) of the FCRA.

94. Pursuant to 15 U.S.C. § 1681n, Defendants are liable to Plaintiff for violating the FCRA by engaging in the following conduct:

    (a) failing to follow reasonable procedures to assure "maximum possible accuracy" of the reports it sold, in violation of 15 U.S.C. § 1681e(b);

    (b) failing to disclose all information in Plaintiff's file, in violation of 15 U.S.C. § 1681g(a); and

  (c) failing to comply with the disclosure requirements of 15 U.S.C. § 1681g(c)(2).

WHEREFORE, Plaintiff claims statutory and punitive damages and all other forms of cognizable damages against Defendants and judgment in her favor, plus lawful interest thereon.

### VI. Jury Trial Demand

95. Plaintiff demands trial by jury on all issues so triable.

### VII. Prayer For Relief

WHEREFORE, Plaintiff respectfully prays that relief be granted as follows:

  (a) That an order be entered certifying the proposed Classes under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and her counsel to represent the Classes;

  (b) That an order be entered declaring that Defendants' actions as described above are in violation of the FDCPA, MFDCPA, MUTPA and FCRA;

  (c) That an order be entered directing Defendants to dispense with their unlawful and non-contractual fees for allegedly bounced checks;

  (d) That an order be entered enjoining Defendants under the MUTPA from collecting unlawful and non-contractual fees for allegedly bounced checks;

  (e) That all such unlawfully collected fees be disgorged by Court order;

  (f) That judgment be entered against Defendants for statutory damages under the FDCPA, MFDCPA and FCRA;

  (g) That judgment be entered against Defendants for actual, compensatory and/or restitution damages;

(h) That judgment be entered against Defendants for punitive damages under the FCRA;

(i) That the Court award costs and reasonable attorney's fees under the FDCPA, MFDCPA, MUTPA and/or FCRA; and

(j) That the Court grant such other and further relief as may be just and proper.

Respectfully submitted,

**LEWIS SAUL & ASSOCIATES, P.C.**

BY:  /s/ Jon Hinck
JON HINCK (Maine Bar No. 8300)
183 Middle Street, Suite 200
Portland, ME  04101
Phone:  (207) 874-7407
Fax: (207) 874-7430
Email: jhinck@lewissaul.com

/s/ Kevin Fitzgerald, Esq.
KEVIN FITZGERALD (ME Bar No. 9373)
183 Middle Street, Suite 200
Portland, ME 04101
Phone: (207) 874-7407
Facsimile: (207) 874-4930
Email: kfitzgerald@lewissaul.com

JAMES A. FRANCIS (PA Bar No. 77474)
JOHN SOUMILAS (PA Bar No. 84527)
**FRANCIS & MAILMAN, P.C.**
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
Phone:  (215) 735-8600
Fax: (215) 940-8000
Email: jfrancis@consumerlawfirm.com
Email: jsoumilas@consumerlawfirm.com

DATE:  March 11, 2011                              Attorneys for Plaintiff and the Classes