### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | | |
|---|---|---|
| **JEAN LAROCQUE,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **No. 2:11-cv-91-DBH** |
| | ) | |
| **TRS RECOVERY SERVICES,** | ) | |
| **INC., et al.,** | ) | |
| | ) | |
| **Defendants** | ) | |

### MEMORANDUM DECISION AND ORDER ON
### CROSS-MOTIONS FOR APPROVAL OF FORM OF LETTER

In accordance with my report and order dated October 4, 2011, *see* Docket No. 33, both sides in this putative class action suit filed cross-motions for approval of a form of letter to be sent by the plaintiff's counsel to putative class members, *see* Motion for Approval of Form of Communication to Non-Parties ("Defendants' Motion") (Docket No. 34); Plaintiff's Motion for Court Approval of Letter to Proposed Class Members ("Plaintiff's Motion") (Docket No. 36). I heard oral argument with respect to both motions on October 21, 2011. *See* Docket No. 38. For the reasons that follow, I now grant in part and deny in part both motions and approve the form of letter and form of postage-prepaid return postcard set forth in Appendices A and B, below.

### I.   Background

On August 26, 2011, I granted an oral motion by the plaintiff to compel responses to several interrogatories and requests for production of documents. *See* Docket No. 27. I ruled that the plaintiff had "made an adequate showing of legitimate need for pre-certification discovery of names and addresses of absentee proposed class members to defend against anticipated challenges to class certification on grounds that her claims are not typical of the

proposed classes['] claims and that common issues do not predominate." *Id*.  I ordered that "the parties treat absentee proposed class members['] names and addresses as confidential pursuant to the existing confidentiality order[] entered in this case, *see* Docket No. 24, and that the plaintiff communicate with absentee proposed class members only by a court-approved written communication, with follow-up communication only with such recipients who affirmatively signal assent to further contact." *Id.*

On September 13, 2011, the plaintiff filed a motion to extend the parties' class certification discovery deadline on grounds, *inter alia*, that the defendants still had not produced a list of putative class members' names and addresses pursuant to my August 26, 2011, order. *See* Docket No. 28.  On October 4, 2011, following the conclusion of briefing of that motion, I convened a teleconference with counsel during which I ordered, *inter alia*, that (i) the defendants produce that list to the plaintiff by October 5, 2011, (ii) the plaintiff forward to the defendants by October 11, 2011, her proposed form of letter to putative class members, and (iii) the parties file by October 18, 2011, either an agreed-upon motion for court approval of the form of letter or, failing such agreement, separate motions for said approval.  *See* Docket No. 33 at 2.  The parties were unable to agree on a form of proposed letter and, hence, filed their cross-motions on October 18, 2011.  *See* Defendants' Motion; Plaintiff's Motion.

## II.  Summary of Parties' Positions

The parties' papers and oral argument revealed the following material differences in approach to the plaintiff's communication with putative class members:

1.      **Mechanism of Assent to Contact**.  The defendants proposed a two-step process by which putative class members wishing to be contacted ("Respondents") would send a postage-prepaid postcard to the plaintiff's counsel, who would them contact those individuals.

*See* Defendants' Motion at 3-4.  The plaintiff proposed that putative class members assenting to be contacted be instructed simply to phone her counsel using a toll-free phone number.  *See* Plaintiff's Motion at 4-5.

The defendants, relying on an affidavit and exhibits of Carla Peak of Kurtzman Carson Consultants LLC, an expert in drafting plain-English notices in class actions, *see* Affidavit of Carla Peak Regarding Pre-Certification Communication Letter ("Peak Aff.") (Docket No. 35) ¶¶ 1-9, reasoned that the use of the postcard would (i) be consistent with the wording of my August 26, 2011, order requiring an affirmative assent to further contact, (ii)  avoid contact between counsel and persons calling, not to discuss issues pertinent to pre-certification discovery, but rather because they are confused, fearful, or wish to complain, and (iii) facilitate equal access to prospective witnesses by the parties by creating a written record of recipients' assent that could be disseminated to both sides.  *See* Defendants' Motion at 3-5.  The defendants added that any concerns that the plaintiff might have about the cost of the mailing could be addressed by sending the initial mailing to a small, random sample of the 20,000 persons whose contact information has been produced to the plaintiff, a common approach to pre-certification contact.  *See id*. at 4-5.

The plaintiff contended that the initial phone call to a toll-free number would be the most efficient and least costly mechanism for response and would adequately ensure the voluntariness of a putative class member's contact with her counsel.  *See* Plaintiff's Motion at 4-5.  As discussed below, the plaintiff opposed the defendant's proposed contact with Respondents.

2.     **Use of Letterhead, Return Address, Telephone Number**.  The defendants proposed that the letter contain no letterhead, return address, or telephone number for the sender, to avoid any response before a recipient read the entire letter.  *See* Peak Aff. ¶ 11 & Exh. 2

(Docket No. 35-2) thereto.  The defendants also proposed that the return address on the envelope used to make the mailing be that of the court, to avoid the appearance of junk mail and increase the likelihood that the letter would be opened and read.  *See* Peak Aff. ¶ 17.

3.  **Applicability of the Attorney-Client Privilege**.  The plaintiff took the position that any communications between her counsel and Respondents were protected by the attorney-client privilege.  *See* Plaintiff's Motion at 4.  At oral argument, her counsel orally moved for an advance ruling as to the applicability of the privilege, contending that the absence of such a ruling would chill counsel's contemplated communications with Respondents.  This was so, counsel argued, because, absent such a ruling, counsel would have to take into account the possibility that communications made in confidence to them could be discovered by the defendants and used against a Respondent, for example, in an ongoing collection dispute between a Respondent and one or both of the defendants.  The defendants' counsel took the position that the court should not render an advance ruling as to the applicability of the attorney-client privilege, stating that the defendants do not anticipate seeking to discover the substance of any such communications but that, if they do, any issue should be resolved at that time.

4.  **Defendants' Access to Respondents**.  The parties sharply disputed whether the defendants had an equal right to contact Respondents.  *Compare, e.g.*, Defendants' Motion at 4-5 *with* Plaintiff's Motion at 4.  The defendants proposed adding a sentence in the plaintiff's counsel's letter to putative class members stating: "An attorney representing TRS and TeleCheck may also contact you."  *See* Exh. 2 to Peak Aff.  The defendants contemplated using the list of Respondents generated from the use of postage-prepaid postcards to make their own direct contact with said Respondents.  At oral argument, the defendants' counsel suggested that, as a matter of fundamental fairness and due process, as well as in accord with relevant discovery

principles, the defendants should have equal access to Respondents, whom they characterized as non-party prospective witnesses, thereby permitting the defendants the opportunity to gather their own evidence bearing on class certification.

The plaintiff countered that, in line with Respondents' likely expectations, Respondents should be characterized as clients of the plaintiff's counsel and, hence, the defendants should have no greater access to them than would be the case with respect to class members post-certification. The plaintiff's counsel argued that, absent court order in the event of an abuse, they have an absolute right to contact the Respondents in confidence, free of control or monitoring by the defendants. Finally, the plaintiff's counsel underscored that the plaintiff, not the defendants, had sought pre-certification discovery in the form of contact with putative class members.[1]

5.    **Miscellaneous Letter Wording Disputes**.   The parties disagreed in various respects as to the wording of the letter. For example, the defendants proposed a plain English approach that would omit the use of the term "class action," which they argued is confusing. *See* Defendants' Motion at 3; Exh. 2 to Peak Aff. The plaintiff contended that the absence of the term "class action" itself could be confusing and misleading. *See* Plaintiff's Motion at 3-4. The defendants proposed omitting a subject line, which they stated is unnecessary and can prevent a reader from reading the entire document. *See* Peak Aff. ¶ 12. The plaintiff included a subject line. *See* [Plaintiff's Proposed Letter] (Docket No. 36-1), attached to Plaintiff's Motion. The parties clashed over whether the defendants' proposed description of the reason that the recipient was being contacted – "because you are listed as someone who bounced a check, was charged a

---

[1] At oral argument, the defendants' counsel agreed with the plaintiff's counsel that no attorney-client privilege would attach to communications, if any, between the defendants' counsel and putative class members. However, the defendants' counsel noted that such communications might implicate work-product protections.

returned check fee, paid a collection fee or received a letter from TRS Recovery Services, Inc. and TeleCheck Services, Inc." – is misleading, given that the plaintiff herself, and other putative class members, never "bounced a check." *Compare* Exh. 2 to Peak Aff. *with* Plaintiff's Motion at 3.

### III.  Conclusion and Order

After careful review of the parties' papers, and with the benefit of oral argument, I **GRANT** in part and **DENY** in part both sides' motions as follows:

1.    I **ADOPT** the defendants' proposal that putative class members be asked to signal assent to contact by returning postage-prepaid postcards to the plaintiff's counsel, and **APPROVE** the form of postage-prepaid postcard set forth in Appendix A, below.  The plaintiff has not articulated any reason why such an approach would be cost-prohibitive.  Such an approach would create a clear record of those assenting to contact with the plaintiff's counsel and would tend to minimize the likelihood that a respondent would contact the plaintiff's counsel for reasons other than to assent to contact, for example, out of confusion or fear.

2.    I **APPROVE** the form of letter to putative class members set forth in Appendix B, below, which incorporates elements of both the plaintiff's and the defendants' proposed forms.  For example, I have adopted the plaintiff's suggestion to use the term "class action" but have sought to define that concept in plain English terms.  I **REJECT** the defendants' proposal to alert Respondents that they might also be contacted by counsel for the defendants.  As noted below, I am deferring ruling on the defendants' request to be allowed equal access to Respondents.  If and when the defendants are permitted such access, they must separately seek Respondents' assent to be contacted by the defendants' counsel.  I **REJECT** the defendants' suggestions to omit any letterhead and to use the court's address as the return mailing address.

6

This is a court-approved communication from the plaintiff's counsel to putative class members. The use of the plaintiff's counsel's letterhead and return address is entirely appropriate. Indeed, it might well be misleading to omit the use of them.

3.     The plaintiff is hereby **ORDERED** to communicate with putative class members using the approved form of postage-prepaid postcard and letter set forth in Appendices A and B, below. The plaintiff is further **ORDERED** to retain all returned postage-prepaid postcards during the term of this litigation, and to maintain a log of all Respondents.

4.     I **DEFER** ruling on the defendants' request to be afforded equal access to Respondents. The narrow issue before me is the appropriate wording of the *plaintiff's counsel's* form of communication with putative class members. The defendants have never formally moved to be permitted such access and did not even state that they desired such access until they filed the instant motion on October 18, 2011. It became clear during oral argument that the question of the defendants' rights of access to Respondents for purposes of pre-certification discovery is nuanced, sharply disputed, and as yet inadequately briefed. Should the defendants wish to press this point, they shall file, no later than November 14, 2011, a motion to contact Respondents, together with a proposed form of communication with Respondents and proposed manner in which Respondents may assent to contact with the defendants' counsel. Failing said filing, the issue shall be deemed moot.

5.     I **DENY** the plaintiff's oral motion for an advance ruling as to the applicability of the attorney-client privilege to any communications with Respondents. Such a ruling would be merely advisory, the defendants having indicated that they do not anticipate seeking to discover said communications and do not necessarily contest the applicability of the attorney-client privilege in that context. If and when the defendants make any such discovery request, the

plaintiff may raise such objections as she deems reasonable, including objections on the basis of invocation of the attorney-client privilege.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 28th day of October, 2011.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge

8

**APPENDIX A:**
**APPROVED FORM OF POSTAGE-PREPAID POSTCARD**

**Front of Postcard:**

[Plaintiff's Attorney
Return Address]

[Plaintiff's Attorney Address]

**Back of Postcard:**

Please complete the information below.

Name: _____

(_____) _____
Area Code  Preferred Contact Number

____:____ _.m.
Best time of day to contact you

Signature:_____          Date:_____

Print Name: _____

9

## APPENDIX B: APPROVED FORM OF LETTER

[Plaintiff's Counsel's Letterhead]

Month 00, 0000

Firstname Lastname
Address 1
Address 2
City, ST Zip

RE:   Request for Information Relevant to Lawsuit Against TRS Recovery Services, Inc. and TeleCheck Services, Inc.

Dear _____:

This is a court-approved letter concerning a lawsuit in federal court in Maine that may affect your rights.  In that lawsuit, *LaRocque v. TRS Recovery Services, Inc., et al.*, 2:11-cv-91-DBH, plaintiff Jean LaRocque seeks to bring a class action, that is, an action on behalf not only of herself but also of others similarly situated, over alleged unlawful collection fees and inaccurate credit reporting by companies named TRS Recovery Services, Inc. ("TRS") and TeleCheck Services, Inc. ("TeleCheck").  My firm and I represent the plaintiff and a potential class of consumers nationwide.  We would like to talk to you because you may have information that could be helpful to us.

According to the information that we have, you were subjected to collection activities relating to a check that you wrote.  You may have been charged a "return check fee" by either TRS and/or TeleCheck.  We believe that TRS and TeleCheck incorrectly collected fees and maintained check writing information.  That is why we have filed a lawsuit against them and why we will ask the court to allow us to represent everyone affected by these business practices.  TRS and TeleCheck say that they didn't do anything wrong.  The court in charge of the case has not decided who is right or whether we can represent everyone.

In order for us to contact you to discuss your experience with TRS and/or TeleCheck, we need your permission.  To give us permission, simply fill out the enclosed postage prepaid postcard and place it in the mail.  Someone from our office will contact you shortly after postcard is received.

Thank you for your help.

Sincerely,

Attorney Name

10