UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JEAN LAROCQUE ex rel. DEIDRE J. SPANG, on behalf of herself and all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>TRS RECOVERY SERVICES, INC. and TELECHECK SERVICES, INC.,<br><br>Defendants. | CIVIL ACTION<br>Docket No: 11-00091-DBH<br><br>CLASS ACTION |

**SUBMISSION BY DEFENDANTS TELECHECK SERVICES, INC. AND TRS RECOVERY SERVICES, INC. ON CONTESTED ISSUES IN PROPOSED ORDER ON CLASS CERTIFICATION AND PROPOSED CLASS NOTICE**

Pursuant to the Court's Decision and Order dated July 17, 2012 (Docket # 56) ("Decision"), and having met and conferred with Plaintiffs' Counsel regarding the form and content of an order on class certification and notice to class members, Defendants submit this explanation of the grounds for their position on issues on which the parties have not reached agreement. Pursuant to the express terms of the Decision, both this submission and Defendants' agreement to other aspects of the proposed order and notice are "[w]ithout prejudice to their objections to this decision [on Plaintiffs' motion for class certification]." *Decision* at 41. Defendants respectfully preserve their objections to the appropriateness of class certification in this action or any other action, and pursuant to the Court's Decision, submit these points as to the form and content of notice and propose an order that would be most appropriate in light of the Court's decision to grant in part Plaintiffs' motion for class certification.

A.     **Proposed Order on Class Certification**

By agreement of the parties, Plaintiffs have filed with their submission each party's proposed order along with a redline showing the differences.  In order not to duplicate filings, Defendants will not re-file their proposed order.  With respect to the Proposed Order on Class Certification, the parties disagree on two principal points:  (1) whether the scope of Class 1 should be nationwide (like Class 2) or limited to the State of Maine (as proposed by Plaintiffs' Counsel); and (2) whether the definition of the class claims required under Fed. R. Civ. P. 23(c)(1)(B) should expressly set forth those limitations Plaintiffs placed on the scope of their claims in order to win certification – principally, limitations intended to render any issue of actual authorization at the point of sale irrelevant, and express explanations of the factual bases on which they premised their claims that the RECR3 letter is false or misleading and that TRS's collection activities violate the Fair Debt Collection Practices Act ("FDCPA") (and its Maine counterpart) or Maine's Unfair Trade Practices Act ("UTPA").

As to the former issue, Defendants' grounds for requesting that the scope of the class that the Court has decided to certify as Class 1 be nationwide are set forth in the accompanying Memorandum of Law on that issue, filed contemporaneously herewith.

As to the definition of the class claims, there can be no argument but that a definition of the class claims must be included.  Rule 23(c)(1)(B) requires it.  Specifically, the Court must provide in its certification order "a readily discernible, clear, and complete list of the claims, issues or defenses to be treated on a class basis."  *Wachtel v. Guardian Life Ins. Co.*, 453 F.3d 179, 187-88 (3d Cir. 2006).  The purposes of the rule are to provide clarity to class members receiving notice regarding the nature of the claims at issue in the lawsuit so they can meaningfully decide whether to opt out, to permit a reviewing court to determine the propriety of the certification decision and to understand the claims that are and are not in the class lawsuit, and to aid courts and the parties in meeting the "critical need" to determine how the case is expected to be tried by providing a "full and clear articulation of the litigation's contours at the

time of class certification." *Id.* at 186. "A certification order or opinion that requires a reviewing appellate court to comb the entirety of its text searching for isolated statements that may add up to a partial list of class claims, issues, or defenses falls short of the readily discernible and complete list of class claims, issues, or defenses required by the Rule." *Id.* at 189. Similarly, "general, non-exclusive statements that fail to articulate the particular claims asserted by Plaintiffs" do not satisfy the rule. *Id.*

In *Wachtel*, the district court had explained that the litigation would involve issues about whether the defendant "fully disclosed and properly applied its reimbursement mechanisms for out-of-network provider services" and "issues regarding Health Net's alleged use of improper reimbursement practices." *Id.* Those statements were too general to satisfy Rule 23(c)(1)(B)'s clear statement requirement. So here, any broad statement of the class claims – e.g. whether the RECR3 is false or misleading, or whether TRS's collection by demand draft violates the FDCPA or the UTPA – will not satisfy the rule.

The need for specificity is particularly acute in this case because the definition of the claims played a central role in the Court's determination that the claims were certifiable and that individualized issues – for example, whether the returned check fee was authorized at the point of sale – would not play any role and therefore predominate over any common issues. The Court should not allow any bait and switch as this case moves to summary judgment. Repeatedly, the Court remarked on the importance of such limitations on Plaintiffs' claims while recognizing that Plaintiffs had the right to narrowly frame each claim in order to obtain certification: "LaRocque's claim is that even with the notices, signed receipts, and consumers' knowledge and understanding at the point-of-sale transaction, use of the RECR3 is still contrary to law. Right or wrong, that narrow claim is a uniform claim that satisfies commonality." *Decision* at 9; *see also id.* at 10-12, 22, 26-27, 38; *Oral Argument Tr.* at 81:8-12 (Plaintiffs' Counsel: "We can assume for the sake of argument every single consumer saw the decal that authorized TeleCheck to do something. We can assume that and it doesn't impact any of the claims here."). At the same time, the Court noted that it was not addressing the merits of Plaintiffs' claims, thereby

recognizing that such claims as framed might or might not survive summary judgment. *See, e.g., Decision* at 38 (citing the hearing transcript, "LaRocque argues, as with the other classes, that TRS had no authority regardless of the decals and that the statutory 10-day notice requirement applies regardless. I do not yet determine whether she or the defendants is/are correct, but the claim is typical of the class."). Therefore, having argued strenuously, in order to obtain certification, that authorization at the point of sale is irrelevant because their claim is that TRS is not authorized even when TeleCheck is, Plaintiffs' claim must stand or fall at summary judgment on the proposition that TRS can never be authorized to collect even when the consumer expressly agrees at the point of sale that TeleCheck is entitled to a returned check fee.

      A clear specification of the claims – as Plaintiffs chose to frame them in order to obtain certification – is necessary to prevent any mismatch between the issues that were deemed certifiable and the issues that get tested at summary judgment. Similar considerations require specifying the Plaintiffs' other claims: that the RECR3 is misleading in how it sets forth the amount of the debt because it uses the phrase "any applicable state tax," that collection by way of an authorized demand draft constitutes prohibited "overshadowing" if negotiation of the draft occurs less than 30 days after the RECR3 is sent, and that collection via a demand draft of a returned check fee authorized by a signed Reg E receipt more than 10 days after sending the RECR3 is actionable under the UTPA as a violation of Maine's statute regarding civil penalties for bad checks.

      Plaintiffs propose that the certification order not specify the class claims in its text but rather refer in general to "the claims and reasons discussed in the Court's Decision on Motion for Class Certification entered July 17, 2012." Regardless whether reference in a certification order to a memorandum decision is ever sufficient for purposes of Rule 23(c)(1)(B), in this case, it is not a good idea. The Court's Decision is 42 pages long. A concise specification of the claims in the shorter order on class certification will allow a class member or reviewing court to determine much more readily the claims on which certification has been granted. Moreover, Defendants are concerned that Plaintiffs' reluctance to have those claims specified in this Order is their first

attempt to retreat from the narrowing of their claims that they necessarily conceded in order to obtain class certification. More clarity is called for than Plaintiffs propose.

Finally, since class certification will require the use of names and addresses to effect class notice, and in light of the other pending suits Plaintiffs' counsel have brought on behalf of people whose names and addresses they obtained in pre-certification discovery, Defendants submit that the order certifying classes should reaffirm that information Defendants provide on class member names and addresses shall be used solely for purposes of this litigation, as the Court has previously ordered in the Confidentiality Order (Docket # 24) and in the Court's order allowing pre-certification discovery of putative class member names and addresses (Docket # 27). This is not a new condition or requirement. It simply reaffirms a requirement the Court has maintained throughout this lawsuit.

**B.     Proposed Class Notice**

The parties have two broad disagreements regarding notice: (1) whether Plaintiffs' proposed postcard notice is sufficient, and (2) the text of the long-form notice.

   1.   Plaintiffs' Proposed Postcard Notice Is Not Robust Enough

Individual notice by first-class mail is the preferred form of notice and is to be used when it is reasonably possible to do so. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) ("Rule 23(c)(2) requires that individual notice be sent to all class members who can be identified with reasonable effort."); Joseph McLaughlin, *McLaughlin on Class Actions* § 5.80 at 1607-08 (8th ed. 2011) ("First-class mail directed to the last-known addresses of class members is generally considered to be the 'best notice practicable' to ensure that proper notice is received by potential class members."). Any initial notice – summary or otherwise – must provide enough information to allow a person reading only that notice to make an informed decision whether to opt out or not. Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (hereinafter *FJC Guide*) at 5 (2010). Plaintiffs' proposed postcard notice does not meet this standard.

Defendants do not contend that a postcard in and of itself is inherently inappropriate as a means of providing notification under Rule 23. The issue is not the postage rate; the issue is the substance of the communication. "[E]ven summary notices can include all elements required by Rule 23(c)(2)(B)." *Id.* This Court has approved notice plans that include postcard notice as part of the plan, when the Court has found the elements of Rule 23(c)(2)(B) have been met, i.e. when notices:

> clearly and concisely state in plain, easily understood language (i) the nature of the action; (ii) the definition of the Classes certified; (iii) the class claims and issues; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the Court will exclude from the Classes any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 270 F.R.D. 30, 35 (D. Me. 2010). "But an overly short summary notice, one that mostly points interested readers to a detailed notice, can result in most class members (who read only the summary notice) being unaware of basic rights." *FJC Guide* at 5. The Plaintiffs' proposed postcard does not provide the information required by Rule 23(c)(2)(B).

The comments that follow are based on the only version of the postcard Plaintiffs had provided as of the late afternoon of September 24, 2012. At roughly 3:20 p.m. that afternoon, Plaintiffs' counsel called undersigned counsel to state that they were attempting "wordsmithing" of the postcard in light of Defendants' stated concerns but that as of that time, they still did not have a draft to show Defendants. As of 4 p.m., Plaintiffs' Counsel e-mailed undersigned counsel a draft of the postcard notice that they intended to propose to the Court. Defendants reserve the right to amend these comments after a meaningful opportunity to review the postcard notice Plaintiffs have filed.

Plaintiffs' originally proposed postcard barely described the "nature of the action," Fed. R. Civ. P. 23(c)(2)(B)(i), referring simply to the "Fair Debt Collection Practices Act and Maine law." It did not provide the "definition of the class[es] certified." Fed. R. Civ. P. 23(c)(2)(B)(ii). It did not describe "the class claims, issues or defenses." Fed. R. Civ. P. 23(c)(2)(B)(iii). It does not inform class members that they can enter an appearance through an attorney if they wish to do so. Fed. R. Civ. P. 23(c)(2)(B)(iv). It did give the reader a deadline by which the reader "must act" if he or she wants to request exclusion, but it did not inform the reader that "the court will exclude from the class any member who requests exclusion," Fed. R. Civ. P. 23(c)(2)(B)(v), and it did not describe for the reader "the manner for requesting exclusion." Fed. R. Civ. P. 23(c)(2)(B)(vi). Finally, it told readers only that they "will be advised" if a judgment is entered, but it did not inform them, as required, of "the binding effect of a class judgment on class members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B)(vii). To learn about any of these matters, the class member must go to the website, call the toll-free number, or write to class counsel. Indeed, the postcard notice itself acknowledged that such additional steps are required for a class member even to understand what the Court's certification order "means for you." To the extent that Plaintiffs' late-revised postcard notice does not remedy all of these problems or otherwise fails to address in its text every requirement under Rule 23(c)(2)(B), it should not be used.

It is the detailed notice that is meant to adequately inform class members. And therefore, it is the detailed notice that must be provided to them by first-class mail. Indeed, until three days ago, Plaintiffs had proposed no other mail notice than the detailed notice. Apparently, they now favor postcard notice due to cost. They have provided Defendants no information about the cost differential, but as a general matter, one cannot do away with reasonably practicable mail notice

in the interest simply of saving cost. *Eisen*, 417 U.S. at 176 ("There is nothing in Rule 23 to suggest that the notice requirements can be tailored to fit the pocketbooks of particular plaintiffs.").

Proposing a postcard notice like that Plaintiffs proposed, which does not adequately inform class members of the rights and consequences of class membership as required under Rule 23(c)(2)(B) is equivalent to doing away with mail notice. It is a means of providing some kind of contact by mail in order to be able to say class members were contacted by mail, without making the kinds of efforts due process requires – namely, efforts that would be made by one intent on reasonably informing the reader of the matters required by Rule 23(c)(2)(B). *See id.* at 175 ("[P]rocess which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected.") (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950)).

2. The Text of the Detailed Notice Does Not Adequately Inform Class Members of the Rights and Consequences of Class Membership and Suffers from Other Flaws.

Notice to the class should be designed so that class members understand it is official court notice, not lawyer solicitation, so that they actually read it. Charles Alan Wright and Arthur R. Miller, *Fed. Prac. & Proc.*, § 1788 (3d ed.) (updated through April 2012) ("Probably the most important reason advanced for requiring the court to forward the notice is the concern that if the class's attorney sends the notice it might give the appearance of client or fund solicitation and in some instances might even be used for that purpose."). Additionally, the notice should accurately inform class members of the rights and consequences of class membership, so they can make an adequately informed decision whether to opt out of the class. *Id.* § 1787 (highlighting "the importance of providing, in an understandable format, sufficient

information about the specific lawsuit to allow a class member to assess whether to exercise the right either to appear or to opt out"). Plaintiffs' proposed notice is not well designed to achieve these goals. Defendants have proposed changes to the notice to cure the deficiencies. Attached hereto as Exhibit A is a redline document showing the changes Defendants proposed to the long-form class notice that Plaintiffs last showed Defendants. Defendants' proposed changes address four issues, discussed immediately below.

>   a. *Plaintiffs' Description of the Class Claims Does Not Adequately Inform Class Members of the Narrowing of Their Claims That Is Necessarily Incident to Class Membership.*

The parties disagree over the description of the class claims and the certified classes in the notice. Those disagreements are a function of the parties' disagreement over the scope of the classes and the nature of the class claims, as discussed above in connection with the class certification order, and in the accompanying memorandum regarding the nationwide scope of Class 1. But the description of the claims must be detailed enough in the notice to allow class members to make a meaningful decision about whether to opt out. The notice should not withhold from the class members information about the way Class Counsel have defined these claims to obtain class certification; class members, if they do not opt out, will be bound by those tactical decisions, and will not be able to reframe the dispute later if the class loses on the claims as Class Counsel have defined them. As a very concrete example, a class member who claims not to have agreed to the returned check fee at all at the point of sale should be aware that that is not the claim being pursued on his or her behalf here, and that he or she will not be allowed to pursue that claim in the future, if he or she remains in the class.

>   b. *Plaintiffs' Proposed Notice Does Not Clearly Explain the Res Judicata Consequences of Class Membership.*

After this case goes to judgment, claim preclusion will prevent anyone who remains a class member from suing these Defendants for any claim arising out of the transactions and events at issue in this lawsuit, as well as any claim that could have been brought in this lawsuit. A final judgment in an action extinguishes "all rights of the plaintiff to remedies against the

defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Restatement (Second) of Judgments* § 24(1) (1982). This principle applies in class actions. *See Reppert v. Marvin Lumber & Cedar Co., Inc.*, 359 F.3d 53, 56 (1st Cir. 2004); 50 C.J.S. Judgments § 1128 (updated through September 2012); *Res Judicata Effect of Judgment in Class Action*, 48 A.L.R. Fed. 675 (updated through September 2012).

Plaintiffs propose to notify class members that if they remain in the class, they will be barred from suing Defendants for the same "legal claims" that are at issue in this lawsuit. The meaning of that may not be apparent to lay people. Indeed, it could lead a class member to believe he or she is barred only from pursuing the same legal theory being pursued in this case, or only from pursuing the claims identified here as class claims. Defendants propose that class members be informed of the true consequences of the decision not to opt out: they will not be able to sue these Defendants for any of the debt collection letters or activities that form the basis for the claims in this lawsuit or any other matter relating to the RECR3 letter and the debt collected pursuant to that letter, no matter the theory or the alleged wrongful conduct.

       c. *Plaintiffs' Use of First Person Makes the Notice Seem Less Official and More Like Solicitation.*

Rule 23 requires that the Court direct notice to the class. Fed. R. Civ. P. 23(c)(2)(B); *McLaughlin on Class Actions*, § 5:85 at 1631 (court has "an affirmative obligation in its capacity as fiduciary for absent class members to review the proposed notice to ensure that it meets the requirements of due process"). The FJC samples and authoritative commentary also contemplate notice being drafted so that it comes from the Court. *Fed. Prac. & Proc.*, § 1788; *FJC Guide* at 8. The reason is simple: official notice from the Court is more likely to be read; notice that reads like lawyer solicitation is less likely to be read. *FJC Guide* at 8-9. The caption and headline on the proposed notice are appropriate. The use of first person, however, undercuts the appearance of the notice as an official court notice, especially since the notice identifies the writer as Plaintiffs' lawyer, thereby negating the required neutral tone and perspective. Plaintiffs

have not articulated any reason these first-person references are necessary or helpful to class members.

> d.  *Plaintiffs' Proposed Notice Contains Inaccuracies in Describing the Parties and the Scope of Further Proceedings.*

Plaintiffs' proposed notice suggests that this matter will necessarily go to trial, and at times gives the impression even that the trial concerns only the amount of damages (as though liability had been determined).  In fact, this case is likely to proceed next to summary judgment, and there may very well be no trial.  Defendants have edited the proposed notice to correct such inaccuracies.

Finally, Plaintiffs' proposed notice refers to TeleCheck and TRS both as "debt collectors."  TeleCheck disputes Plaintiffs' claim that it is a debt collector, and the notice should not be written so as to presume that Plaintiffs are correct on that point.

Dated:       September 24, 2012.

/s/  Clifford H. Ruprecht

Clifford H. Ruprecht
Merrill's Wharf
254 Commercial Street
Portland, ME 04101
(207) 791-1100
cruprecht@pierceatwood.com

Donald R. Frederico (*pro hac vice*)
100 Summer Street
Suite 2250
Boston, MA 02110
(617) 488-8100
dfrederico@pierceatwood.com

PIERCE ATWOOD LLP

*Attorneys for Defendants TeleCheck Services, Inc. and TRS Recovery Services, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this day I caused the attached Submission on Contested Issues to be filed with the Clerk of the Court using the Court's CM/ECF system, which will effect service on all registered counsel of record.

Dated: September 24, 2012.

                                                /s/  Clifford H. Ruprecht

                                      Clifford H. Ruprecht

                                      PIERCE ATWOOD LLP
                                      Merrill's Wharf
                                      254 Commercial Street
                                      Portland, ME 04101
                                      (207) 791-1100
                                      cruprecht@pierceatwood.com

                                      *Counsel for Defendants TeleCheck Services, Inc. and TRS Recovery Services, Inc.*