UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JEAN LAROCQUE ex rel. DEIDRE J. SPANG, on behalf of herself and all others similarly situated<br><br>        Plaintiff,<br><br>v.<br><br>TRS RECOVERY SERVICES, INC. and TELECHECK SERVICES, INC.,<br><br>        Defendants. | CIVIL ACTION<br>Docket No: 11-00091-DBH<br><br>CLASS ACTION |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' REQUEST THAT CLASS ONE BE DEFINED AS A NATIONWIDE CLASS**

**I. INTRODUCTION**

In its July 17th Decision on Motion for Class Certification, the Court directed the parties to present jointly the portions of the proposed class certification order on which they could agree, and to present separately the portions on which they could not agree. One significant area of disagreement, based in part on developments since the Court issued its decision, concerns the proper geographic scope of Class 1. Because recent events have made this an important issue about which Defendants have serious concern, Defendants have made it the subject of this separate filing.

As explained more fully below, Defendants are concerned that Plaintiffs' counsel has misused the discovery process in this case to attract additional clients and generate parallel state-wide class actions, which they have now filed in four other judicial districts. They have done so in order to circumvent the statutory cap on damages set forth in the Fair Debt Collection

Practices Act ("FDCPA"). More specifically, by seeking certification of a nationwide "duplicate recovery" class here (Class 3, which the Court held could not be certified), counsel gained access to potential class members across the country, including the four plaintiffs on whose behalf they have filed the recent lawsuits. At the same time, by limiting Class 1 to a Maine-only class, they left the door open to filing claims that parallel the Class 1 claims in other districts, as they now have done four times and may do again. There is no good reason for the geographical discrepancy between Class 1 and Class 2. Further, the reason counsel gave the Court for needing the pre-certification list of class members by which they gained access to the new plaintiffs appears to have been a pretext. Defendants can only conclude that counsel's request to certify two FDCPA classes of different geographic scope was part of an overall strategy to use this lawsuit as a vehicle for generating more lawsuits.

In order to rectify the illogical discrepancy between the scope of the two FDCPA classes, and to reduce the risk of multiplicative litigation that would needlessly drain judicial resources, cause excessive legal expense and engender divergent rulings on identical issues, Defendants respectfully request that the Court define Class 1 to be of nationwide scope, consistent with the scope of Class 2.[1]

**II. ARGUMENT**

    **A. The Inconsistent Scope of the Two FDCPA Cases Has Resulted in Multiplicative Litigation.**

Plaintiffs in this case sought certification of three classes asserting claims under the Fair Debt Collection Practices Act ("FDCPA"). The first was a class of Maine consumers who

---

[1] By making this request, Defendants do not concede that class certification is appropriate, and expressly reserve their objections to class certification. Rather, Defendants are responding to the Court's request for submissions regarding how to define the classes that the Court has already decided, over Defendant's opposition, should be certified. *See* Decision on Motion for Class Certification (Doc. No. 56), at 41 (parties' submissions of their positions regarding class definitions shall be "[w]ithout prejudice to their objections to this decision.")

received Defendant TRS Recovery Services, Inc.'s ("TRS') RECR3 letter, seeking collection of a debt.  The second was a nationwide class of consumers who received the RECR3 letter and from whom TRS sought to collect funds within 30 days of receiving it.  The third was a nationwide class of persons from whom TRS collected the same debt twice.  Plaintiffs did not explain why they were seeking only state-wide certification of the first class but nationwide certification of the second and third classes.

Unfortunately, the reason for the Plaintiffs' inconsistent approach now seems clear.  Plaintiffs' counsel have used a list of persons in the United States who were within the scope of the putative Class 3 ("the Class List"), which Defendants were ordered to produce as part of pre-certification discovery, to identify, contact and accept representation from[2] persons on whose behalf they have now filed parallel class actions in other federal district courts.  Since late August, Plaintiffs' counsel have filed at least four such cases in federal courts in California, Kansas, New York and North Carolina.[3]  The names and addresses of the named plaintiffs in all of the newly filed cases were among those contained in the Class List.  Seeking certification of both a Maine-only class, which would leave open the filing of similar class actions in other states, and a nationwide class, which allowed counsel access to the nationwide Class List, appears to have been a strategic maneuver to use this lawsuit as a vehicle for generating multiple other lawsuits in order to circumvent the FDCPA's cap on damages.

If indeed this was a pre-determined strategy, as these developments suggest, it appears to have been furthered by the creation of a pretext for Plaintiffs' alleged need for the Class List as

---

[2] Defendants assume that counsels' initial contacts with class members occurred by way of the letter to potential class members that Magistrate Judge Rich had approved.  Even if this Court-approved process was followed, however, it was not used for the purpose for which the Court designed it, and it has been used for a purpose that the Court did not intend.

[3] The complaints in the four lawsuits are attached hereto as Exhibits A-D.  The law firm of Francis & Mailman, P.C. represents the plaintiffs in all four cases, and the law firm of Saul Lewis represents the plaintiffs in two of the cases.

part of pre-certification discovery. Plaintiffs persuaded the Court (Rich, M.J.) to compel discovery of the Class List by arguing that they needed access to potential class members to develop evidence that would support their motion for class certification.[4] Despite this argument, on which the Court expressly relied in ordering production[5], Plaintiffs submitted no evidence from any putative class member with their Motion for Class Certification (despite its accompanying 250 pages of declarations and exhibits), with their Reply, or at the May 3rd hearing. Counsel's apparent use of the Class List to drum up new clients and file multiple, parallel class actions is additionally troubling because the Court expressly ordered that the Class List would be subject to the Confidentiality Order that it had previously entered, the Confidentiality Order provides that confidential materials could be used solely for the purposes of this lawsuit,[6] and in seeking the Class List, Plaintiffs represented to the Court that they would abide by the Confidentiality Order's limitation.[7]

In light of the serious concerns raised by this course of conduct, and because there is no sound reason for the two classes to have different geographic bounds, Defendants appeal to the discretion that the Court reserved in issuing its class certification decision to eliminate the geographic discrepancy between the two FDCPA classes and define both as having nationwide scope.

### B. The Court Has Broad Discretion to Determine The Scope of The Class.

---

[4] *See* Plaintiffs' Letter Brief dated August 22, 2011, attached hereto as Exhibit E.

[5] Order dated August 26, 2011, Doc. No. 27: "The plaintiff has made an adequate showing of legitimate need for pre-certification discovery of names and addresses of absentee proposed class members to defend against anticipated challenges to class certification on grounds that her claims are not typical of the proposed classes claims and that common issues do not predominate."

[6] Paragraph 5(a) of the Confidentiality Order (Doc. No. 24) provides that documents designated as Confidential "shall not be used or disclosed by the parties, counsel for the parties or any other persons identified in ¶ 5(b) for any purpose whatsoever other than to prepare for and to conduct trial and discovery in this action, including any appeal thereof."

[7] *See* Plaintiffs' August 22, 2011 letter brief, p. 5 ("Plaintiff will treat such name and address information confidentially and solely for limited purposes of this litigation.")

The Court has broad discretion to define the class as it deems appropriate.  Rule 23(c)(1)(B) provides:  "An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)."  Rule 23(c)(1)(C) provides:  "An order that grants or denies class certification may be altered or amended before final judgment."  The First Circuit has encouraged district courts to "fine-tune [their] class certification order[s]" in order to avoid unnecessary interlocutory appellate review.  *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 294 (1st Cir. 2000); *see also In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 39 (1st Cir. 2009) (citing Fed. R. Civ. P. 23(c)(1)(C)) ("Courts can amend certification orders to reflect major changes or minor adjustments to the class. District courts should ensure that, after the new order, the class's composition and claims remain well defined."); *Lamphere v. Brown Univ.*, 553 F.2d 714, 720 (1st Cir. 1977) (instructing the district court to "take seriously its power under rule 23(c)(1) to alter or amend its certification order before the decision on the merits").  The broad scope of the rule is intended to allow courts "to modify class certification orders in various ways to respond to subsequent developments in the case, in order to promote its fair and efficient adjudication." *DL v. Dist. of Columbia*, 277 F.R.D. 38, 43 (D.D.C. 2011).

In an analogous context, the First Circuit has upheld a district court's discretion to expand the geographic scope of a certified class, even over the objection of one of the parties.  In *In re Pharmaceutical Industry Average Wholesale Price Litigation,* 588 F.3d 24 (1st Cir. 2009), the court affirmed the district court's order approving a class action settlement.  The case involved claims under state consumer protection statutes that defendants had deceptively inflated the prices of certain pharmaceutical products.  The district court had certified a nationwide consumer class, except that it "excluded residents in nine states whose consumer-protection

statutes did not create a cause of action, unlike the law in states whose residents were certified as class members." *Id.* at 29.  After more post-certification litigation, one of the defendants, AstraZeneca, reached a settlement with a subclass.  As the court of appeals explained, "[i]n an effort to achieve a comprehensive settlement, the parties also agreed AstraZeneca would pay the consumers from nine states who had previously been excluded from the class." *Id.*

One of the class representatives for the settling subclass objected to the settlement, and argued, *inter alia,* that the district court's amended certification order did not satisfy the requirements of Fed. R. Civ. P. 23(c)(1)(B) because it did not explain why the court approved the expanded settlement class.  The district court rejected the objection, and the First Circuit affirmed.  Referencing Rule 23(c)(1), the Court of Appeals held that "Courts can amend certification orders to reflect major changes or minor adjustments to the class."  588 F.3d at 39.  The court further explained:

> This interpretation makes sense in light of Rule 23(c)(1)(B)'s history and purpose.  Rule 23 was substantially revised in 2003 to "provide the district courts with the tools, authority, and discretion to closely supervise class-action litigation." *See* Comm. On Rules of Practice and Procedure, Judicial Conference, *Report of the Judicial Conference* 8 (Sept. 2002).  As part of this project, the rules committee made several amendments to Rule 23(c) in 2003 that put greater emphasis on understanding and articulating the "contours" of the class action throughout the litigation. . . . .

588 F.3d at 39 (citations omitted).  The court also held that it was "perfectly clear why the district court expanded the settlement class," namely because in the settlement "AstraZeneca bargained for 'total peace' to resolve all remaining claims against it." *Id.* at 40-41.

Although the *AWP* case was decided in the context of settlement, the First Circuit clearly recognized and upheld a district court's authority to expand the geographic scope of a class over the objection of one of the parties (there, an objecting class representative).  In at least one

respect, this case presents an even stronger basis for expanding the geographic scope of the class, because the Court has not yet issued a class certification order, and no class notice has yet been sent. The July 17th Decision identified several remaining issues that must be resolved before the class certification order can issue, and directed the parties to meet and confer about the proposed class definitions. While the geographic scope of Class 1 was not identified as one of the remaining issues to be resolved, there is nothing to prevent the Court at this juncture from determining a different scope from the one that Plaintiffs had proposed. Indeed, this pre-notice juncture presents a particularly opportune time for the Court to harmonize the two classes' geographic scope. *See also Manual for Complex Litigation,* § 21.222, at 271 (4th ed., 2004)("The court should also consider whether the class definition captures all members necessary for efficient and fair resolution of common questions of fact and law in a single proceeding. If the definition fails to include a substantial number of persons with claims similar to those of the class members, the definition of the class may be questionable.")

Plaintiffs likely will argue that they are not required to bring, and the Court is not required to certify, nationwide classes under the FDCPA. The leading case on this issue is *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997). In *Mace,* the Seventh Circuit reversed a district court's holding that the inclusion of the damages cap in the FDCPA precluded courts from certifying state-wide classes. The court of appeals qualified its holding, however, by explaining:

> [T]he case before us does not now present multiple or serial class actions to recover for the same misconduct. Hence, it would be premature to require a nation-wide class at this juncture. If and when multiple or serial class actions are presented, it will be time enough to rule on such a pattern. At this point, there is no persuasive reason to require a nation-wide class.

*Id.* at 344.  Other courts since *Mace* have also concluded that the FDCPA does not mandate nationwide-only class actions, but have reached that conclusion when only a single action based on identical collection letters had been previously filed, *Mailloux v. Arrow Fin. Services, LLC*, 204 F.R.D. 38, 43 (E.D.N.Y. 2001), or when the evidence was insufficient to demonstrate that defendant would be subject to class actions in several states, *Borcherding-Dittloff v. Transworld Sys., Inc.*, 185 F.R.D. 558, 566 (W.D. Wis. 1999), or when two similar classes are differentiated by being limited to discrete and dissimilar periods of time.  *Nichols v. Northland Groups, Inc.*, 05 C 2701, 2006 WL 897867, *8 (N.D. Ill. Mar. 31, 2006).  None of these cases involved facts similar to those at hand.  The Seventh Circuit in *Mace* and other courts might well have reached a different result if multiple state-wide class actions had been filed against the defendant covering the same issues and the same time period.

This Court need not decide whether it is required to define Class 1 as a nationwide class because, even assuming there is no such requirement, the Court has discretion to do so.  Defendants are not aware of any case holding that a district court may not certify an FDCPA case as nationwide over the plaintiff's objection where circumstances warrant, and any argument that the Court lacks such authority would fail in light of the First Circuit's decision in *AWP*.  This case presents the situation that the Seventh Circuit in *Mace* envisioned but did not address: the filing of multiple FDCPA class actions asserting identical claims.  Nothing in *Mace* or its progeny prevents the Court from deciding that Classes 1 and 2 should both be nationwide.  Such a decision would be especially appropriate here, since Plaintiffs have already sought and obtained nationwide certification of one of the classes, and it is the same counsel that have begun filing parallel class actions in other states.

### C. Defining Class 1 to Have Nationwide Scope Would Further The Important Policies of Judicial Economy and Avoidance of Inconsistent Results Reflected in Fed. R. Civ. P. 23

Defining Class 1 as nationwide rather than state-wide would better promote the policies behind class litigation.[8] One of these policies is to "avoid[] inconsistent results by offering the efficiency and predictability of a unitary adjudication or settlement of the claims of all persons to whom the defendant may be liable based on similar facts." *McLaughlin on Class Actions,* § 1.1 at 11-12 (8th ed. 2011)(quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 805 (1985). *See also Crown, Cork & Seal, Inc. v. Parker,* 462 U.S. 345, 349 (1983)(describing "the principal purposes of the class action procedure" as "promotion of efficiency and economy of litigation"); *Gunnels v. Healthplan Servs., Inc.* 348 F.3d 417, 427 (4th Cir. 2003)("[T]he protection from inconsistent adjudications derives from the fact that the class action is binding on all class members . . . .").

Indeed, the policy of avoiding inconsistent adjudications is expressly written into the rule. Rule 23(b)(1)(A) permits class certification where "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class . . . ." In fact, Plaintiffs have maintained from the very outset of this litigation, and have repeated in each of the new lawsuits, that "This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the [Defendants]."

---

[8] Defendants do not concede that a class action is a superior form of adjudication over individual lawsuits, or that the other requirements for class certification have been met. Rather, given that the Court has decided to certify Class 1, Defendants simply contend that a nationwide class in this case would more effectively promote Rule 23's underlying policies than a statewide class.

(Compl. at ¶ 66; Exs. A-D, ¶ 39). While the focus of the rule is on the relative merits of class litigation versus individual litigation, the policy of avoiding inconsistent adjudications also applies when courts consider nationwide certification versus state-by-state certification. There is no difference in principle, only in degree.

Plaintiffs seek a ruling on the application of a uniform federal law to a single document (the RECR3) used nationwide. Given that the Court has determined for both Class 1 and Class 2 that common issues predominate over individual issues, there is no good reason why different federal courts should be asked to answer the same question in potentially different ways for people who received the same letter and advance the same arguments but happen to live in different states. Because this lawsuit was filed more than a year before the others, and this Court has already undertaken extensive analysis of the Plaintiffs' claims in connection with Plaintiffs' Motion for Class Certification, the legal issues Plaintiffs have raised should be decided by this Court, in this action, once and for all.

Moreover, defining Class 1 as a nationwide class is fully consistent with the policies behind the FDCPA's damages cap. Regardless of whether the FDCPA mandates that the $500,000 class action cap apply only once to all class actions making the same claims against a given defendant, an issue that the Court does not now need to decide, allowing counsel free rein to file as many class actions as they choose in order to continually reset the cap would have the effect of writing the cap out of the statute. As one court held in refusing to certify a county-wide class:

> The parties disagree as to whether there is an all encompassing statutory cap on the amount of damages for which a defendant can be liable under the FDCPA. The court is not convinced that such a cap on damages exists. With the absence of a statutory cap on damages, allowing plaintiff to define a small class would only increase the likelihood of multiple lawsuits. While Congress may

> not have intended the damages to only be available once, Congress
> presumably did not intend damages to be available numerous
> times. Allowing plaintiff to define her class so as to only include
> Santa Clara County residents could potentially result in just that, a
> defendant being liable for the lesser of $500,000 or 1 per centum
> of their net worth numerous times for one infirmity in a form letter
> sent to many. Such a result seems inconsistent with the policy
> behind both the FDCPA and class actions.

*Campos v. Western Dental Services, Inc.,* 404 F. Supp. 2d 1164, 1173 (N.D. Cal. 2005). Although, unlike the court in *Campos,* this Court has already decided to certify Classes 1 and 2, in light of the recent proliferation of new lawsuits asserting identical claims, the Court can and should exercise its discretion to give both of the certified classes the broadest possible reach. To do otherwise would undercut not only the policies underlying class actions, but also the policies inherent in Congress's decision to impose a cap on damages.

Finally, the Court should not feel bound by the scope of Plaintiffs' request for certification. This is not a case where Plaintiffs sought certification of only a state-wide class, in which case the Court might consider it unfair to require Plaintiffs to represent consumers nationwide. Rather, Plaintiffs sought certification of both state-wide classes and nationwide class. The Court has already accepted counsel's argument that they would provide adequate representation to a nationwide class, and there is no reason to believe that requiring Plaintiffs to represent both Classes 1 and 2 on a nationwide basis would significantly increase their burden of representation. Moreover, because counsel now are seeking to represent members of FDCPA classes in four additional states, they cannot seriously argue that they are unwilling to accept a broader representation. Indeed, any argument Plaintiffs might advance to oppose the re-characterization of Class 1 as a nationwide class is almost certainly contradicted by their decision to seek nationwide certification of Class 2. *Cf. Guevarra v. Progressive Financial Services, Inc.,* 2006 WL 3613742, at *3 ("limiting the case to IKEA creditors contradicts plaintiff's argument

concerning commonality under FRCP 23(a), which hinges on the fact that claims under FDCPA . . . arise out of the form of the letters, *not* the nature of the underlying debts.") In these circumstances, where there is no good reason to define Classes 1 and 2 as having different geographic reach, the only course that will promote judicial economy, avoid the risk of inconsistent rulings, and effectuate the policies underlying the statutory cap , and the only course that makes sense, is to define the scope of both as nationwide.[9]

### III. CONCLUSION

For all of the above reasons, Defendants request that the Court define both Class 1 and Class 2 as nationwide classes.

Dated: September 24, 2012.

/s/ Clifford H. Ruprecht
Clifford H. Ruprecht
Merrill's Wharf
254 Commercial Street
Portland, ME 04101
(207) 791-1100
cruprecht@pierceatwood.com

/s/ Donald R. Frederico
Donald R. Frederico (*pro hac vice*)
100 Summer Street
Suite 2250
Boston, MA 02110
(617) 488-8100
dfrederico@pierceatwood.com

PIERCE ATWOOD LLP

---

[9] Plaintiffs also should not be heard to argue that Defendants should have made this request at the time the Court was considering the class certification motion. The issue presented at that time was whether any of the proposed classes should be certified, not how such classes should be defined. In any event, the need for the requested relief was not apparent until the recent filings of the four new cases, and Plaintiffs are not prejudiced by having the issue of geographic scope raised now.

*Attorneys for Defendants TeleCheck Services, Inc.
and TRS Recovery Services, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on this day I caused the attached Memorandum In Support Of Defendants' Request That Class One Be Defined As A Nationwide Class to be filed with the Clerk of the Court using the Court's CM/ECF system, which will effect service on all registered counsel of record.

Dated:  September 24, 2012.

                                                /s/  Clifford H. Ruprecht

Clifford H. Ruprecht

PIERCE ATWOOD LLP
Merrill's Wharf
254 Commercial Street
Portland, ME 04101
(207) 791-1100
cruprecht@pierceatwood.com

*Counsel for Defendants TeleCheck Services, Inc. and TRS Recovery Services, Inc.*