# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **DELLARINA M. STOUT,** on behalf of herself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| **TRS RECOVERY SERVICES, INC.** and **TELECHECK SERVICES INC.,** | ) ) ) |
| Defendants. | ) ) ) |

Civil Action No. 12-cv-2561 RDR/KGS

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## COMPLAINT - CLASS ACTION

### I.      Preliminary Statement

1.      This is a consumer class action brought on behalf of a state-wide class of consumers subjected to Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p ("FDCPA").

### II.     Jurisdiction and Venue

2.      Jurisdiction of this Court arises under 15 U.S.C. § 1681p, 15 U.S.C. § 1692k and 28 U.S.C. § 1331.

3.      Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

### III.    Parties

4.      Plaintiff DellaRina M. Stout is an adult individual who resides 701 Morton Street, Great Bend, KS 67530.

5.      Defendant TRS Recovery Services, Inc. ("TRS") is a business entity regularly engaged in the business of collecting debts in this District with its principal place of business located at 6200 South Quebec Street, Greenwood Village, CO, 80111-4729.

- 2 -

6. Defendant TeleCheck Services, Inc. ("TeleCheck") is a business entity regularly engaged in the business of collecting debts in this District with its principal place of business located at 6200 South Quebec Street, Greenwood Village, CO, 80111-4729.

7. The principal purpose of Defendants is the collection of consumer debts using the mails and telephone, and Defendants regularly attempt to collect alleged debts originally due to another.

### IV.　Factual Allegations

8. Defendants work in concert with each other in connection with the collection of alleged debts originally due to another and correspond with consumers, including Plaintiff, with letterhead that, on occasion, identifies the sender of the correspondence as both TeleCheck and TRS in the same communication.

9. Moreover, TeleCheck uses its custom TeleCheck-marked envelopes and return address to mail dunning letters and other correspondence for TRS.

10. TeleCheck contracts with several national merchants such as Wal-Mart to process checks.

11. When a consumer presents a check for payment at a merchant location, the check is scanned through a cash register and data about that check-writer is electronically communicated by the merchant to TeleCheck.

12. Instantaneously, TeleCheck advises the merchant whether it should accept or reject the check.

13. This decision is based upon several risk factors, including the check-writer's history (as reflected in TeleCheck's own consumer reporting database), the time of day, the nature of the transaction, and other factors.

14. Notably, the decision to accept or reject a check is not made upon whether the check-writer actually has money in his or her checking account to cover the check at issue.

15. When TeleCheck advises a merchant to accept a check, it offers one of two protections to that merchant -- either (a) a guarantee that if the check is dishonored TeleCheck will purchase that check; or, (b) an offer of debt collection services for a fee, in order to collect the debt for the allegedly dishonored check from the check-writer.

16. Sometimes, as in the case of Plaintiff, checks are considered dishonored by TeleCheck even though there were sufficient funds in the check-writer's bank account or even though the check at issue actually cleared and the merchant was actually paid.

17. Defendants are aware of several shortcomings in their process, which is automated, that can lead to such mistakes.

18. Defendants have 19 shared employees who receive and process hundreds of consumer disputes concerning the supposed debts.

19. Even though, within the statute of limitation period, Plaintiff had sufficient funds in the checking account from which the check was drawn to cover a check that she wrote to a merchant for household goods, TeleCheck erroneously determined that Plaintiff's check had bounced.

20. Defendants then began a standardized process of collection activities against Plaintiff for the allegedly bounced check.

21. Defendant first communication with Plaintiff was in the form of a standardized collection letter, which Defendants call the "RECR3" letter.

22. The RECR3 letter is Defendants' first communication to a consumer such as Plaintiff in connection with the collection of any debt such as the one allegedly owed by

Plaintiff.

23. The RECR3 letter, in standardized and uniform language, provides that:

(a) TeleCheck had "purchased" the alleged merchant check and debt and "turned that debt over" to its "affiliate" TRS for collection;

(b) TRS has already resubmitted the check for payment;

(c) "TRS Recovery Services will [further] create a paper draft and submit it to your bank" in order to help itself to "the outstanding amount";

(d) "the outstanding amount" is characterized in the same letter as "the return check fee plus any applicable state tax;"

(e) The return check fee is listed as "$25.00," a uniform fee that Defendants charge in Kansas; and,

(f) the "applicable state tax" is never identified or itemized.

24. TRS has no contract with Plaintiff, had never been identified to Plaintiff, and has no legal right or authority to create any draft in Plaintiff's name.

25. Plaintiff owed no debt to the merchant, because Plaintiff's check had not bounced.

26. Nevertheless, Defendants admit that they nevertheless collected the underlying check amount from Plaintiff a second time on or about the date they mailed the initial RECR3 letter to Plaintiff.

27. Further, the RECR3 letter fails to clearly identify the entire "debt," and is deceptive concerning the total "outstanding amount," and whether it includes any applicable state tax in this State.

28. Pursuant to their usual and customary procedures, Defendant created a draft in Plaintiff's name approximately 14 days after they sent Plaintiff the RECR3 letter and presented it

to Plaintiff's bank in an effort to collect this purported additional "outstanding amount."

29. Defendants' actions as described above are consistent with their standard policies and practices for collecting alleged consumer "debts" associated with allegedly bounced checks, and for helping themselves to additional unauthorized and unlawful "fees" in the amount of $25.00.

30. Defendants have received numerous disputes concerning the above-described and unlawful practices, but have failed to take corrective action.

31. At all times pertinent hereto, Defendants were acting in concert with each other and by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

32. The acts alleged against the Defendants were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management and operation of Defendants' businesses.

33. Each Defendant acted as the principal, agent, or joint venturer of, or for, other Defendants with respect to the acts, violations, and common course of conduct alleged herein.

### V.    Class Allegations

34. Plaintiff brings this action individually and as a class action, pursuant to Rules 23(a) of the Federal Rules of Civil Procedure, on behalf of the following Class:  All natural persons residing in the State of Kansas to whom Defendants mailed to a Kansas address any letter substantially similar in form and language to the RECR3 letter described in this Complaint within the applicable statute of limitations.

35. The Class is so numerous that joinder of all members is impracticable.  Although

the precise number of Class members is known only to Defendants, Plaintiff avers upon information and belief that the number is the hundreds if not thousands.

36. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. The principal question is whether the Defendants' RECR3 letter violated the FDCPA.

37. Plaintiff's claims are typical of the claims of the Class, which all arise from the same operative facts and are based on the same legal theories.

38. Plaintiff will fairly and adequately protect the interests of the Class. Representative Plaintiff is committed to vigorously litigating this matter and has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Representative Plaintiff nor her counsel has any interest which might cause them not to vigorously pursue this claim.

39. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Class, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

40. Whether Defendants RECR3 form letter was an unlawful FDCPA communication can be easily determined.

41. A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecution of

separate claims against Defendants is slight because the unlawful charges are relatively small and the maximum statutory damages are limited to $1,000.00 under the FDCPA. Management of the Class' claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class members may be obtained from Defendants' records.

## VI.   Claims

### Count One - FDCPA

42.   Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

43.   Defendants are "debt collectors" as defined by section 1692a(6) of the FDCPA.

44.   Plaintiff is a "consumer" as defined by section 1692a(3) of the FDCPA.

45.   Defendants violated the FDCPA at 15 U.S.C. §§ 1692e and 1692g.

46.   Defendants' acts as described above were done with intentional and negligent disregard for Plaintiff's rights under the law and with the purpose of coercing Plaintiff to pay monies not truly owed.

47.   As a result of the above violations of the FDCPA, Defendants are liable to Plaintiff for actual damages, to Plaintiff and the Class for statutory damages, and for attorney's fees and costs.

## VII.   Jury Trial Demand

48.   Plaintiff demands trial by jury on all issues so triable.

49.   The Plaintiff, Dellarina Stout, by and through her attorneys, SmithMarco, P.C., herby respectfully requests that the trial of this matter proceed in Kansas City.

## VIII.   Prayer For Relief

WHEREFORE, Plaintiff respectfully prays that relief be granted as follows:

(a) That an order be entered certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and her counsel to represent the Class;

(b) That judgment be entered against Defendants and in favor of Plaintiff and the Class for statutory damages under the FDCPA;

(c) That judgment be entered against Defendants and in favor of Plaintiff for actual and/or compensatory damages;

(d) That the Court award costs and reasonable attorney's fees under the FDCPA; and

(e) That the Court grant such other and further relief as may be just and proper.

Respectfully submitted,

BY: /s/ D. Matthew Durgin
D. MATTHEW DURGIN
**SMITHMARCO, P.C.**
8508 W. 90th Terrace
Overland Park, KS 66212
(913) 908-2313

JAMES A. FRANCIS*
JOHN SOUMILAS*
DAVID A. SEARLES*
**FRANCIS & MAILMAN, P.C.**
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

* *Pro Hac Vice* applications forthcoming

DATE: August 28, 2011                                        Attorneys for Plaintiff and the Class