

LAW OFFICES

FRANCIS & MAILMAN
A PROFESSIONAL CORPORATION

LAND TITLE BUILDING, 19TH FLOOR
100 SOUTH BROAD STREET
PHILADELPHIA, PA 19110
215-735-8600
FAX: 215-940-8000
WWW.CONSUMERLAWFIRM.COM
EMAIL: INFO@CONSUMERLAWFIRM.COM

August 22, 2011

*Via Email – newcases.portland@med.uscourts.gov*
The Honorable John H. Rich, III
United States District Court
District of Maine
Edward T. Gignoux U.S. Courthouse
156 Federal Street
Portland, ME  04101

*Re: LaRocque ex rel. Spang v. TRS Recovery Services, Inc., et al., No. 11-91*

Dear Judge Rich:

      This firm along with co-counsel Lewis Saul & Associates, P.C. represent Plaintiff Jean LaRocque in the above consumer class action.  We submit this letter brief pursuant to Your Honor's Report of Hearing and Order dated August 16, 2011 (Dk. No. 26).  Plaintiff respectfully requests that this Court compel Defendants' production of relevant personal identifying information -- names and addresses -- of absentee class members, by fully answering Plaintiff's Interrogatories Directed to Defendants Nos. 2, 4, 6, 8, 10, 12, 14, and 16, or Plaintiff's Requests for Production Directed to Defendants Nos. 55-66, which essentially request the same identifying information as the above-enumerated interrogatories, but in document form.

**I.     BACKGROUND**

      Mrs. LaRocque, a Maine resident and senior citizen, brought this class action lawsuit after Defendants sought to collect in an unlawful manner a "debt" that she never incurred, and then placed an adverse notation regarding that imagined debt on her check-writing consumer report.  Plaintiff seeks to represent several classes of similarly situated consumers, and has brought claims under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p (FDCPA), the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x (FCRA), the Maine Fair Debt Collection Practices Act, 32 M.R.S.A. §§ 11001-11054 (MFDCPA), and the Maine Unfair Trade Practices Act, 5 M.R.S.A. §§ 205A-214 (MUTPA).

      Discovery to date has identified several groups of potential class members.  For example, Defendants responded to Plaintiff's Interrogatory No. 21 that within one year of the filing of this action there were 99 occasions when a customer's check cleared but was nevertheless assigned by Defendant TeleCheck for collection to Defendant TRS, and TRS resubmitted the check to the bank, making a duplicative withdrawal.  This is what happened to Plaintiff in March 2010:  her

check to RiteAid cleared, but TRS nevertheless unlawfully resubmitted it for withdrawal and collected on the "debt" a second time.

Further, TRS sends consumers a dunning notice advising them that they may dispute the validity of the debt within the first 30 days -- an important notice required by the FDCPA and MFDCPA.  Despite this notice, TRS unlawfully engages in self-help collection of the debt within the 30-day dispute period by resubmitting the check for collection to the consumer's bank even though TRS has no such authorization.  According to Defendants' response to Plaintiff's Interrogatory No. 9, TRS did this 527 times in Maine alone within the limitations period.  This is what TRS did to Plaintiff, even though she disputed the validity of the "debt" within the first 30 days after receiving the initial dunning notice.

Defendants also seek and, in fact, collect an *additional* $25 "return fee" in the apparent belief, right or wrong, that a customer's check bounced.  Defendants have no right to such an additional fee and, in any event, no right to help themselves to the fee, even when checks do in fact bounce.  Nevertheless, they create an unauthorized draft, submit it to the customer's bank, and take the additional purported "debt." According to Defendants' responses to Plaintiff's Interrogatories Nos. 1 and 3, TRS did this 27,507 times in Maine, and over 1.3 million times in the Unites States within the limitations periods.  As to Plaintiff, TRS helped itself to this additional $25 fee, creating an unauthorized draft in Plaintiff's name within the first 30 days of the initial dunning notice and submitting it to her bank, even after Plaintiff disputed the validity of that "debt."

TRS then turned the matter back to TeleCheck, a consumer reporting agency, which prepared an inaccurate and incomplete consumer report about Plaintiff, and then provided Plaintiff with an incomplete file disclosure in violation of the FCRA.  Defendants' response to Plaintiff's Interrogatory No. 15 states that TeleCheck prepared 2,440 substantially similar reports for consumers in Maine within the limitations period.

## II.   DISCOVERY SOUGHT

Plaintiff sought discovery about several groups of consumers who would comprise one or more classes or sub-classes in this case, and further specifically requested that Defendants turn over the names and addresses of consumers in the various groups identified above.  Defendants objected on a number of grounds, but at the hearing before this Court on August 15, 2011, they focused on what they characterize as "the potential privacy interests of the persons to whom the [information] relates," namely, the potential absentee class members.  Defendants now apparently concede that the information Plaintiff seeks is relevant, despite earlier objection.   In providing the group numbers discussed above, Defendants also made several other statements and objections.  Defendants stated that they cannot be sure that the numbers include only natural persons, and not businesses.  Defendants also stated that they cannot be sure the Maine-specific numbers are actually comprised of Maine residents.  (*See* TRS Interrogatory Objections and Responses, submitted by Defendants to this Court with August 12, 2011 correspondence seeking a discovery-dispute hearing).

Defendants also take the position that it is relevant to the unlawful debt collection claims whether a particular consumer saw a decal disclosing the $25 fee on the back of a cash register at a merchant location and/or whether the consumer agreed to such an additional fee. Indeed, Defendants sought to compel and were granted discovery from Plaintiff on that subject. (*See* Dk. No. 26).

### III.     LEGAL ARGUMENT

It is well-recognized law that in a class action the parties may take discovery of potential class members. *See* H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS § 16:2 (4th ed. 2002). The question here is whether such discovery may be taken of absentee class members pre-certification. The answer is that discovery of absentee class members may be taken pre-certification where it is appropriate for class certification issues. *See M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 103 F.R.D. 635, 637 (D. Mass. 1984) ("While it is true that discovery against absentee class members under Rules 33 and 34 cannot be had as a matter of course, the overwhelming majority of courts which have considered the scope of discovery against absentees have concluded that such discovery is available, at least when the information requested is relevant to the decision of common questions, when the interrogatories or document requests are tendered in good faith and are not unduly burdensome, and when the information is not available from the representative parties.") (*citing Dellums v. Powell*, 566 F.2d 167, 187 (D.C. Cir. 1977), *cert. denied*, 438 U.S. 916, *reh. denied*, 439 U.S. 886) (emphasis added).

The First Circuit has even reversed a trial court decision denying class certification precisely because the trial court did not permit pre-certification class discovery beyond the two named plaintiffs in that matter. *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972) ("[t]o pronounce finally, before allowing any discovery, the nonexistence of a class or set of subclasses, when their existence may depend on information wholly within the defendants' ken, seems precipitate and contrary to the pragmatic spirit of Rule 23.").

Numerous other federal courts have compelled discovery from defendants of absentee class members' personal identifying information prior to class certification. *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 2010 WL 2362981, *1-2 n.2 (S.D.N.Y. June 14, 2010) (allowing discovery of absentee class members names, addresses and telephone numbers as is "common practice in the class action context,") (*quoting Khalilpour v. CELLCO Partnership*, 2010 WL 1267749, at *3 (N.D. Cal. Apr. 1, 2010)); *Youngblood v. Family Dollar Stores, Inc.*, 2011 WL 1742109, at *5 (S.D.N.Y. Jan. 5, 2011) (compelling from defendant names and addresses of absentee class members prior to class certification); *Putnam v. Eli Lilly & Co.*, 508 F. Supp. 2d 812, 814 (C.D. Cal. Aug. 23, 2007) (compelling production of names, addresses and telephone numbers of absentees pre-certification); *Babbit v. Albertson's, Inc.*, 1992 WL 605652, at *5–6 (N.D. Cal. Nov. 30, 1992) (compelling names, addresses, phone numbers and social security numbers of absentees pre-certification and holding, "[d]efendant has access to this information, and plaintiff should have the same access").

Plaintiff's request here is similar to the above cases, allowing absentee class member discovery pre-certification. Plaintiff makes the request in good faith, the information sought is

relevant to class certification and its production is not unduly burdensome.  In *Youngblood*, the court compelled defendant to produce class members' contact information, finding that plaintiff had a good faith need for the information to demonstrate common issues of fact predominated in her motion for class certification.  *Youngblood*, 2011 WL 1742109, at *4.  Similarly, in *Putnam*, the court compelled production of absent class members' contact information prior to class certification holding that such information was necessary for the plaintiff to address issues of commonality and typicality relevant to that case.  *Putnam*, 508 F. Supp. at 814.

The information sought here is essential to verify the common experience of customers who received what are essentially form letters and that the common issues predominate over individual issues. Discovery would also verify whether Plaintiff's claims are typical of the classes' claims.  Plaintiff also seeks to properly confirm consumer class members (as distinguished from businesses not covered under the consumer protection statutes at issue) and the Maine resident class members that receive protection under the MFDCPA and MUTPA. Name and address information for absentee class members can readily assist in addressing these class-certification issues, which, incidentally, were raised by Defendants in interrogatory responses.

Thus far, Defendants do not concede that this case is suitable for class treatment, that an ascertainable class or classes exist, and if sufficient common issues exist and predominate. Indeed, Defendants are seeking discovery designed to defeat Plaintiff's motion for class certification, and further seek to cast Plaintiff as atypical of any class.  Defendants have stated that the experience of individual class members (what they saw at a cash register or may have authorized by signing a store receipt) is relevant to issues of certification.  Plaintiff will be severely prejudiced at the class certification phase if Defendants are permitted to argue that Plaintiff is atypical of the class(es) she seeks to represent if Plaintiff is precluded from taking any discovery from absentee class members about their experiences, how common were those experiences and how typical was Plaintiff's experience.  Similarly Plaintiff would be prejudiced if Defendants challenge commonality or the predominance of common issues in this case under Fed R. Civ. P. 23 but Plaintiff is not allowed to create any record with discovery from absentee class members to defeat such a challenge.

The case at bar is unlike cases such as *Robbins v. NCO Financial Systems, Inc.*, referenced by Defendants, which refused to compel pre-certification discovery of absentee class members' identifying information.  2006 WL 3833352 (N.D. Ind. Dec. 12, 2006).  Plaintiff Robbins sought the same information as Plaintiff LaRocque, but Robbins was unable to articulate any persuasive reason why absent class members' personal information was needed pre-certification. *Robbins*, 2006 WL 3833352 at *5.  Robbins' only argument for compelling identifying information regarding absentee class members was to prove numerosity.  *Id.*  The court found plaintiff's request was premature, since the *Robbins* defendant had not yet provided the total numbers of individuals in each of the proposed classes.  *Id.*

Unlike the plaintiff in *Robbins*, Plaintiff here has clearly articulated specific class-certification needs for the information -- namely, to identify consumer class members (as opposed to businesses), to identify Maine resident class members, to further assess the

commonality of the experiences of class members and the typicality of Plaintiff's experience, and to level the playing field with respect to background information when Defendants argue, as they have already foreshadowed, whether there are important individual issues raised, for example, with respect to customer understanding and assent to terms for the charging of an additional "returned fee."

## IV.  PRIVACY INTERESTS

Defendants' purported concern about the privacy of absentee class members is substantially misplaced and certainly overstated. At the telephone hearing on August 15, 2011, Defendants referenced the Graham-Leach-Bliley Act and the Fair Debt Collection Practices Act as federal statutes that include certain privacy protections in certain circumstances. But neither statute precludes *discovery in civil litigation* where that discovery is appropriate. Moreover, Plaintiff seeks only names and addresses, not more private personal indentifying information or financial information. Surely, post-certification such information, and more, is discoverable, and no statute provides otherwise. There is no question, therefore, that the information sought is discoverable; the only issue is whether it should be discovered at this stage of the case.

In furtherance of privacy interests, however, Plaintiff has already agreed to a protective order in this case (Dk. No. 24). Plaintiff will treat such name and address information confidentially and solely for limited purposes of this litigation. Plaintiff will limit contacts with absentee class members to an initial (Court-approved) written communication with follow-up communications to only those recipients who affirmatively signal assent to further contact. Finally, Plaintiff will without additional guidance from the Court set aside Defendants' response to Interrogatory No. 3 (involving 1.3 million transactions) and instead limit her pre-certification discovery to the other groups, six of which are under 2,500 (Interrogatory Nos. 5, 7, 9, 15, and 21) and one of which is 27,507 (Interrogatory No. 1). Using available data management software offline and secure, Plaintiff believes that the discovery sought here is easily ascertainable and manageable.

If Plaintiff's discovery is limited to her experiences only (as the named representative) and to defense-generated highly qualified group figures, Plaintiff will be greatly and needlessly limited in her ability to address the very case-specific issues that will be at the core of class certification briefing in this matter. The discovery sought above is imperative for Plaintiff to meet her burden for class certification, and thus Plaintiff respectfully seeks an order compelling the same.

Should Your Honor require any further information, we stand ready to respond.

Respectfully,

*John Soumilas*
JOHN SOUMILAS

cc:   Donald R. Frederico, Esq. (via email)
      Clifford Ruprecht, Esq. (via email)
      Nolan L. Reichl, Esq. (via email)