# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

| | |
|---|---|
| JEAN LaROCQUE, ex rel. DEIDRE J. SPANG, on behalf of herself and all others similarly situated, | Civil Action No. 11-00091-DBH |
| Plaintiff, | CLASS ACTION |
| v. | |
| TRS RECOVERY SERVICES, INC., et al., | |
| Defendants. | |

## PLAINTIFF JEAN LaROCQUE'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO EXPAND CLASS

**LEWIS SAUL & ASSOCIATES**
LEWIS J. SAUL (*pro hac vice*)
JON HINCK
KEVIN M. FITZGERALD
183 Middle Street, Suite 200
Portland, ME 04101
(207) 874-7407

**FRANCIS & MAILMAN, P.C.**
JAMES A. FRANCIS (*pro hac vice*)
JOHN SOUMILAS (*pro hac vice*)
DAVID A. SEARLES (*pro hac vice*)
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

## I. BACKGROUND

On July 17, 2012, this Court granted Plaintiff's Motion for Class Certification and certified three classes of consumers. *LaRocque ex rel. Spang v. TRS Recovery Services, Inc.*, et al., 2012 WL 292119, *16 (D. Me. July 17, 2012).[1] The Court ordered the parties to "meet and confer on the form and content of an order certifying and defining the classes to satisfy Rule 23(c)(1)(B) … and on the form and content of a class notice that satisfies Rule 23(c)(2)(B)." *Id*.

In addition to certifying three classes of consumers, on July 17, 2012, this Court also denied certification of a class of 261 persons whose paper checks were processed electronically and from whom one of the Defendants recovered a duplicative payment by re-presenting the paper check to the drawer's bank. *Id.* at *12-14. This Court subsequently approved a mailing to these persons -- the contents of which were agreed upon by Plaintiff and Defendants -- concerning their rights to bring claims and the statute of limitations. (Doc. 60).

On September 24, 2012, the parties submitted their respective proposals for a class certification order for the three certified classes and the form of class notice. (Docs. 64, 65). Defendants also submitted a separate memorandum in support of their request that Class 1 be expanded from a statewide class to a nationwide class. (Doc. 66). On October 10, 2012, the Court converted Defendants' submission to a Motion to Expand Class. (Doc. 67).

Defendants' motion for certification of a nationwide Class 1 is meritless and should be denied. Defendants' desire to limit their exposure has nothing to do with Fed. R. Civ. P. 23, and

---

[1] The Court summarized its certification decision as follows: "The first class will test the legality of the contents of the first RECR3 letter under the Federal Debt Collection Practices Act (FDCPA) and its Maine counterpart. The second class will test the federal overshadowing claim in TRS's (not TeleCheck's) use of the letter and the defendants' collection activities, uniformly conducted within 30 days of the letter. The third class will test whether the defendants' recovery of a $25 returned check fee by TRS draft is legal under Maine law even with the point-of-sale notices and the RECR3 letter." 2012 WL 292119 at *16.

Defendants do not, and cannot, even argue that it does. The nationwide class that Defendants now prefer is too large and unmanageable (most likely over 1.3 million consumers), and makes no sense when the claim at issue is only for FDCPA *statutory damages*, which are capped at $500,000 per defendant.[2]

It is not an accident that Plaintiff, like many FDCPA class litigants, moved to certify a statewide Class 1. A nationwide class would be unmanageable and would greatly dilute any recovery. There is no proper comparison here to Plaintiff's proposed Classes 2 (certified) and 3 (not certified) that sought FDCPA *actual damages*, which are without any cap or limitation.

Further, Class 1 tests the legality of a reference within the RECR3 letter of a "state tax." Because different states have different state tax laws, it makes most sense to assess that claim on a state-by-state basis.

Of course, only a few short months ago Defendants argued that Class 1 should not be certified at all (as a statewide class or otherwise), that there were no common issues, and that Plaintiff was inadequate as a class representative. Now Defendants insist that Plaintiff represent over 1.3 million consumers, and, at her expense, send them notice. Such notice would cost approximately three times the amount of any statutory damages recovery, which, if Defendants get their way, will be guaranteed to be much less than $1 per consumer. This is not the superior method of resolving this controversy under Rule 23, nor fair to Maine class members who currently could expect up to several hundred dollars per consumer for a successful prosecution of

---

[2] Defendants' admitted that the "RECR3 letter" is their standard initial collection letter that is mailed to all consumers at the beginning of the collections process, and have answered in discovery that from March 11, 2010 to August 4, 2011 they have collected funds from 1,334,941 unique bank accounts nationwide, presumably after the mailing of the initial letter. (*See* Ex. 1 at Interrogatory Resp. No. 3). Given that Class 1 tests the legality of the RECR3 letter, it is reasonable to infer that a nationwide Class 1 would be well in excess of 1.3 million consumers, and may be substantially larger given the fact that Defendants have not changed their standard collection practices since August 2011.

the claims of Class 1.

There is no precedent for Defendants' present request, and this Court should reject it. The "fine-tuning" of an agreed upon *settlement* class in *In re Pharmaceutical Indus. Wholesale Price Litig.* that Defendants reference has very little resemblance to Defendants' contested request here to convert a 748 person statewide class into a 1.3 million person national class subject to the same FDCPA statutory damages cap.

Finally, Defendants' purported shock at the filing of other statewide class actions has no basis in reality and provides no justification for converting Class 1 into a national class. Defendants' "assumption" that Plaintiff's counsel improperly used a pre-certification letter approved by Magistrate Judge Rich in this matter (Doc. 27) to sign up more clients in other states (New York, California, Kansas and North Carolina) is false. Plaintiff's counsel wrote to certain class members (who fit the profile of Class 2) only with the approval of this Court (Doc. 60) and only after having the contents of that letter approved by these very Defendants post-certification. (Doc. 59). The post-certification court-approved letter properly advised consumers that they may have certain claims and that the statute of limitations may be running if they wished to pursue their claims. (Doc. 59, 60). It would have been an improper action by Defendants if they sought to limit the practice of Plaintiff's counsel, and irresponsible of Plaintiff's counsel at that time not to represent consumers who themselves sought representation and who were already members of one class that Plaintiff's counsel represented -- *i.e.*, who were already clients.

Moreover, Defendant must have known from the beginning of this case that a Maine statewide class could be duplicated in other states (by Plaintiff's counsel or other attorneys) given Defendants' standardized collection practices and nationwide reach. Indeed, several other

3

law firms are also now seeking to represent plaintiffs in the recently-filed actions in New York, California, Kansas and North Carolina. (*See* Doc. 66 at Ex. A-D). Defendants certainly understood that reality when they briefed class certification in this matter, without making any mention of that concern. Moreover, Defendants must now realize that their collection practices give them exposure in at least 45 other states -- under the FDCPA, state collection laws and state unfair trade practices statutes. That exposure is not new; nor is it something that Defendants could not have foreseen. Most importantly, however, Defendants' broader exposure is *not* a basis for them to force Plaintiff to prosecute a nationwide FDCPA class which she did not move to certify and which makes no sense for her, for the current Maine class members, or for other consumers nationwide.

Defendants simply took a calculated risk here, that they would defeat class certification, and lost with respect to three out of four classes. They now improperly seek to re-litigate that class certification decision. They do so by requesting an unprecedented ruling that would turn this case and FDCPA jurisprudence upside down -- a ruling that would at its essence provide that a debt collector can unilaterally convert a relatively small consumer case into a nationwide action for the sole purpose of limiting its exposure nationally to $500,000 toward any number of millions of Americans who may have been subjected to unlawful collection practices. This Court should reject Defendants' request.

## II.   ARGUMENT

The Court granted certification of Class 1, proposed as "All people in Maine to whom, since March 11, 2010, TRS has sent an initial dunning letter substantially similar to its RECR3 letter." 2012 WL 292119 at *2. In order to address this Court's concerns relating to some of the wording of the proposed class definition, as articulated in the July 17, 2012 memorandum,

Plaintiff's proposed Order of class certification states the definition as: "All natural persons with an address in the State of Maine to whom Defendant TRS Recovery Services, Inc. sent its initial collection form letter, known as the RECR3 letter, between March 11, 2010 and the present." (Doc. 64-1, page 2 of 5). However phrased, it is clear that Plaintiff moved to certify, and the Court intended to certify, a statewide class of 748 Maine persons asserting a distinct claim under the FDCPA. 2012 WL 292119 at *2.

### A. The FDCPA Plainly Provides For Statewide Class Actions

Contrary to what Defendants propose, there is no basis for expanding the scope of Class 1 beyond what Plaintiff has requested and what the Court has certified. Courts have repeatedly recognized the superiority of FDCPA class actions proceeding on a statewide basis. The seminal case is *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997).

In *Mace*, the district court had required that a FDCPA class be nationwide. The Seventh Circuit reversed, among other reasons, because of the plain language of the FDCPA in contrast to that of other similar consumer protection statutes. The court began its analysis with the observation that "we know of no authority requiring the participation of the broadest possible class. On the contrary, the class requirements found in the Federal Rules of Civil Procedure encourage rather specific and limited classes." 109 F.3d at 341. The court then analyzed the statutory language as follows:

> The FDCPA provides that:
>
> (a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of-
>
> (1) any actual damage sustained by such person as a result of such failure;
>
> (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

5

> (B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and
>
> (3) ... the costs of the action, together with a reasonable attorney's fee...

15 U.S.C. § 1692k (emphasis added).

> Statutes like the Truth In Lending Act (TILA) include similar language, but with one crucial difference. TILA provides that "the total recovery ... in any class action or series of class actions arising out of the same failure to comply by the same creditor shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the creditor." Truth in Lending Act, 15 U.S.C. § 1640(a)(2)(B) (emphasis added); see also Electronic Fund Transfer Act, 15 U.S.C. § 1693m(a)(2)(B) (substituting "person" for "creditor"); Consumer Leasing Act, 15 U.S.C. § 1667d (incorporating 15 U.S.C. § 1640).  TILA's reference to a "series of class actions" is conspicuously absent from the FDCPA.

109 F.3d at 342.  In addition to relying on the plain language of the statute, the *Mace* court pointed out other problems with the district court's holding:

> to require a nation-wide class as the district court did here brings with it other problems that will be discussed later. There are other possible problems with the district court's reasoning. The FDCPA has a short, one-year statute of limitations making multiple lawsuits more difficult. Further, if a debt collector is sued in one state, but continues to violate the statute in another, it ought to be possible to challenge such continuing violations. Given the uncertainty of those policy considerations, there is no compelling reason to ignore the plain words of the statute.

109 F.3d at 344.  *See also Sanders v. Jackson,* 209 F.3d 998, 1002 (7th Cir. 2000) ("there is no provision that limits defendants being exposed to more than one FDCPA class action lawsuit").

When a defendant, such as Defendants here, argued that a court can expand a FDCPA class to capture all similar plaintiffs, that argument was rejected:

> The court in *Mace* stated that it "[knew] of no authority requiring the participation of the broadest possible class." In addition, the *Mace* court found that, as a policy matter, the damages limitation in the FDCPA would not necessarily "become meaningless" if serial suits were allowed, as the district court had feared. The Seventh Circuit felt that the one-year statute of limitations in the

> FDCPA would make multiple lawsuits more difficult, and noted that there was "no way of telling whether such repeated class actions are possible or likely, here or generally," which made requiring a nationwide class at that stage premature. Furthermore, the court found that, "if a debt collector is sued in one state, but continues to violate the statute in another, it ought to be possible to challenge such continuing violations."
>
> This court finds the analysis and reasoning in *Mace* persuasive in assessing the defendants' arguments in the present matter. Like the defendants in *Mace,* LVNV and ARS have pointed to no authority for the proposition that the court should use its discretion to require a broader class.

*Lewis v. ARS Nat. Services, Inc.*, 2011 WL 3903092, * 7 (Sept. 6, 2011 M.D. Ala.). *See also Balogun v. Midland Credit Mgmt., Inc.,* 2007 WL 2934886, at *7 (S.D. Ind. Oct 5, 2007) ("FDCPA requires neither a nationwide class ... nor a limit on Defendants' exposure to more than one FDCPA class action suit"); *Nichols v. Northland Groups, Inc.,* 2006 WL 897867, *10 (N.D. Ill. Mar. 31, 2006) ("This court concludes that neither the FDCPA nor Rule 23 require a larger class than Plaintiff proposes to certify"); *D'Alauro v. GC Servs. Ltd. P'ship,* 168 F.R.D. 451, 455 (E.D.N.Y. 1996) (same).

While Defendants urge this Court to go beyond the holding of the appellate decision in *Mace*, it is obvious they do so only out of self-interest in minimizing their potential liability. That is not a factor that would outweigh the plain meaning of the FDCPA, Rule 23 or the rulings in *Mace* and its progeny. Further, as discussed below, it is also outweighed by the fiduciary duty owed by both the Plaintiff and this Court to the members of Class 1.

### B. <u>Plaintiff's And The Court's Fiduciary Duty To Class 1 Members</u>

While Defendants see no obstacle to forcing Plaintiff to represent a nationwide class she has not asked to be certified, this Court has already recognized that Plaintiff does indeed have the right to decide how best to define the class and tailor the appropriate claims for the members' benefit:

7

> It is apparent that LaRocque—or more bluntly, her lawyers—have strategically chosen which claims to pursue and which arguments not to make. Some courts have criticized that strategic behavior and disqualified a class representative accordingly. But commentators have argued persuasively that this is legitimate behavior by a class representative, designed to maximize the success of the class recovery. The First Circuit has not spoken to the issue, but I am satisfied that, when called upon to do so, the First Circuit will find the commentators' arguments persuasive. Moreover, the First Circuit has said that there is no res judicata (claim preclusion) effect on class members for claims that were not advanced. Thus, class members are not prejudiced by the strategic behavior here to ignore certain potential claims.

2012 WL 292119 at *8 (citations omitted).

Plaintiff's decision to seek a statewide class is consistent with and in furtherance of her fiduciary duty to the class. This is a duty obligating her counsel and the Court as well. *See In re Pet Food Products Liability Litigation,* 629 F.3d 333, 348 (3d Cir. 2010) (evaluating proposed settlement); *In re New Motor Vehicles Canadian Export Antitrust Litigation*, 800 F. Supp. 2d 328, 333 (D. Me. 2011) (same).

If Defendants' Motion is granted, that fiduciary obligation would be violated because expanding the class scope would be directly contrary to the interest of the class members. Defendants' exposure would be capped at the statutory maximum under section 1692k(a)(B)(ii), and instead of 748 Maine residents sharing in the statutory damages, over 1.3 million more consumers would be included so that any recovery would be tremendously diluted. In all likelihood, a nationwide class would encompass so many individual class members that no member would receive any worthwhile recovery. By contrast, certifying one or more statewide classes would be consistent with the FDCPA's purpose of preventing abusive and deceptive debt collection activities, 15 U.S.C. § 1692(a), and assessing the appropriate statutory penalty for doing so. "[I]f a debt collector is sued in one state, but continues to violate the statute in another, it ought to be possible to challenge such continuing violations." *Mace, supra,* 109 F.3d at 344.

8

### C. A Nationwide Class Is Not A Superior Method Of Adjudication

The Court has already determined that certification of the FDCPA claim of the 748 members of Class 1 is superior to other available methods for fairly and efficiently adjudicating the controversy. 2012 WL 292119 at *8 (discussing components of Fed. R. Civ. P. 23(b)(3)). It should therefore go without saying that a nationwide class, with the threat of resulting dilution of class members' recoveries, is the opposite of superior.

This very situation was recently considered by a federal judge in the context of a proposed FDCPA class action settlement. In *Zimmerman v. Zwicker & Associates, P.C.*, 2011 WL 65912 (D.N.J. Jan. 10, 2011), the parties presented a nationwide class settlement which, due to its size (800,000 consumers) and the statutory cap on class action damages, resulted in no money to class members while extinguishing all their claims. 2011 WL 65912 at *5. As the court viewed it, "the mere fact that the direct recovery to the class is *de minimis* (or more accurately non-existent), does not bar the settlement. Nonetheless, under the facts presented herein, the Court finds that it is not fair, reasonable and appropriate to foreclose hundreds of thousands of consumers from pursuing their FDCPA rights in exchange for nothing." *Id*.

The *Zimmerman* court went on to reject the settlement, for reasons equally applicable to rejecting Defendants' position here:

> If there is even a fair possibility that consumers in other states can obtain a monetary recovery from defendant arising from the collection letters defendant sent out from August 6, 2008 to the present, they should have the right to pursue their claims. The phantom benefit from the proposed settlement is not adequate consideration for the release of tens of thousands of potential FDCPA claims.
>
> Defendant argues that a nationwide class is necessary to prevent it from being subject to "copycat class actions in other jurisdictions, exposing it to potential liability in excess of the absolute limit set by Congress." July 8, 2010 JLB at 3. The Court disagrees. For the reasons already discussed, defendant's collective nationwide exposure may not be absolutely capped at 1 percent of its net worth. Further, the Court agrees with the view that an FDCPA class does not

9

have to include all potential plaintiffs. *Sanders,* 209 F.3d at 455 ("[W]hile a class may be national in scope, the plain meaning of the FDCPA does not require that the largest potential class be certified"). *See also D'Alauro,* 168 F.R.D. at 455. In addition, the one-year statute of limitations in the FDCPA limits a defendant's FDCPA liability if it takes prompt measures to correct FDCPA violations. *Sanders, supra; Mace,* 109 F.3d at 324 ("The FDCPA has a short, one-year statute of limitations making multiple lawsuits more difficult"). Thus, defendant's prediction that Congressional intent will be frustrated if the proposed settlement is not approved is fallacious.

The proposal that was forthrightly rejected in *Zimmerman* is the very result that Defendants hope to achieve by forcing Class 1 to be nationwide. It would fly in the face of the plain statutory language, would undermine counsel's and the Court's duty to the absent class members, and essentially render Class 1 uncertifiable.

### D. The Efficiencies That Defendants Suggest Are Not A Basis To Convert A Manageable Statewide Class Into A Behemoth National Class

Defendants also argue that the benefits of efficiency and judicial economy require a radical reshaping of Plaintiff's Class 1. First, it is only speculative that a 1.3 million person FDCPA class would somehow be more efficient to adjudicate than five statewide classes. Consolidation via the multi-district litigation ("MDL") rules could be just as efficient, or even more efficient. Such consolidation could also reduce the risk of any inconsistent adjudication. Most importantly, however, as important as efficiency is to the judicial process, it is not an element for determining class certification Fed. R. Civ. P. 23. Plaintiff has satisfied the requirements of Rule 23 in certifying Class 1. Defendants have not, and cannot do so with respect to a nationwide class. Finally, efficiency cannot be a basis for eliminating substantive rights. Defendants cannot properly cite efficiency as the basis for practically eviscerating the FDCPA claims of over a million consumers nationwide.

### III.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' Motion to Expand the Class.

                                      Respectfully submitted,
                                      **FRANCIS & MAILMAN, P.C.**

Date:  October 15, 2012          BY:    */s/ John Soumilas*
                                      JAMES A. FRANCIS (*pro hac vice*)
                                      JOHN SOUMILAS (*pro hac vice*)
                                      DAVID A. SEARLES (*pro hac vice*)
                                      Land Title Building, 19th Floor
                                      100 South Broad Street
                                      Philadelphia, PA  19110
                                      (215) 735-8600
                                      jfrancis@consumerlawfirm.com
                                      jsoumilas@consumerlawfirm.com

                                      **LEWIS SAUL & ASSOCIATES, P.C.**
                                      LEWIS J. SAUL (*pro hac vice*)
                                      JON HINCK
                                      KEVIN M. FITZGERALD
                                      183 Middle Street, Suite 200
                                      Portland, ME  04101
                                      (207) 874-7407
                                      lsaul@lewissaul.com
                                      jhinck@lewissaul.com
                                      kfitzgerald@lewissaul.com

                                      *Attorneys for Plaintiff and the Classes*