UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JEAN LAROCQUE ex rel. DEIDRE J. SPANG, on behalf of herself and all others similarly situated<br><br>                              Plaintiff,<br><br>v.<br><br>TRS RECOVERY SERVICES, INC. and TELECHECK SERVICES, INC.,<br><br>                              Defendants. | CIVIL ACTION<br>Docket No:  11-00091-DBH<br><br>CLASS ACTION |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO EXPAND CLASS**

Plaintiff's Opposition to Defendants' Motion to Expand Class rests principally on a flawed and grossly exaggerated estimate of the size of an expanded Class 1.  Using over-inclusive figures from a superseded version of Defendants' Answers to Interrogatories, Plaintiff asks the Court to conclude that expanding Class 1 from a Maine-only class to a nationwide class would cause the number of class members to make an astronomical leap from 748 (Maine) to 1.3 million (nationwide).  In fact, the 1.3 million number does not represent the size of a nationwide class.  Rather, Defendants estimate that the size of an expanded class is approximately 170,000 (as of August 2011), and approximately 120,000 of these people are already members of Class 2.  While the real numbers are not yet known, and Defendants are prepared to investigate and produce them after the parameters of the classes have been set, under any scenario Plaintiff's argument significantly misses the mark.

Taking into account a more realistic expectation regarding class size, Plaintiff's arguments lose any force that they may have had.  Expanding Class 1 to nationwide scope

1

would not make this case any less manageable than it currently is, nor would it place an inordinate burden on Plaintiff or Class Counsel. Although it is true that class members must share per capita the FDCPA's cap on statutory damages, over 120,000 members already are seeking a share of such damages, and they also seek actual damages, unlimited by the statutory cap. As argued in Defendants' motion, allowing multiple statewide lawsuits for the same claim would defeat the purpose of the statute and risk inconsistent judgments by different courts on uniform issues of federal law.

Further, in her Opposition, Plaintiff provides no response to Defendants' suggestion that her counsel misused discovery by representing to the Court that they needed a list of putative class members to obtain evidence to support their anticipated motion for class certification. As explained in Defendants' request to expand the class, despite those representations, Plaintiff never submitted any information from absent class members in support of her motion for class certification. Instead, counsel parlayed the contacts they were able to make through the pre-certification class list into engagements to file additional lawsuits on behalf of people on the list. Only by defining Class 1 as nationwide can the Court mitigate the effects of this apparent discovery abuse.

Much of Plaintiff's Opposition depends on her contention that an expanded Class 1 would include more than 1.3 million members. For this reason, and because most of Plaintiffs' other arguments were anticipated and addressed in Defendants' initial brief, this Reply will focus principally on the expected size of the expanded class.

## I.   THE RUMORS OF THE EXPANDED CLASS SIZE ARE GREATLY EXAGGERATED

### A.   Plaintiff Incorrectly Presumes That All Persons From Whom Returned Check Fees Were Collected Received RECR3 Letters.

Class 1, as Plaintiff defines it, essentially consists of Maine residents who received a RECR3 letter, the form letter that Defendant TRS sends to certain persons who bounce checks. The claim advanced on behalf of Class 1 is that the RECR3 letter, in form and content, runs afoul of the FDCPA. Plaintiff opposes expansion of Class 1 to a nationwide

2

class because, she argues, the class would explode in size from 748 persons to more than 1.3 million persons.

Plaintiff acknowledges that 1.3 million is not even purported to be the number of nationwide Class 1 members (RECR3 recipients); it is the number of returned-check fees collected in a given period.[1]  Plaintiff's claim that Class 1 contains 1.3 million people rests on a flawed assumption that Plaintiff buries in a footnote:  Plaintiff says Defendants "have collected funds from 1,334,941 unique bank accounts nationwide, *presumably after mailing of the initial letter*." (Pl. Br. at 2 n.2) (emphasis added).  The italicized "presum[ption]" that every person from whom funds are collected receives a RECR3 letter is the linchpin of Plaintiffs' argument.  And it is wrong.

A RECR3 does not go to every person from whom funds are collected.  Plaintiff learned in the Rule 30(b)(6) deposition of Defendants that three conditions have to be met for a RECR3 letter to be sent out: (1) a debt has to be received by the Defendants; (2) the Defendants have to have a name and address for the debtor – for example, no RECR3 goes out if Defendants have only bank account information electronically read from the check; and (3) the debt has to be based on an item returned by a bank with a "bankable reason code" – for example, items returned due to a closed account or a stop-payment will not result in sending a RECR3.  (*See* Deposition of Denise Hossler dated Aug. 24, 2011 at 57:25 – 60:8, attached hereto as Exhibit B). In fact, from March 10, 2010 to August 5, 2011, there were 845 RECR3s sent to a Maine address but there were 6,485 returned-check fee collections.[2] (Declaration of Trisha Drumm at ¶¶ 2-3). Similarly, in the period in question, when returned-check fees were collected from 1.18 million unique bank accounts

---

[1]  In fact, the correct number is not even 1.3 million.  That figure comes from superseded answers to interrogatories.  The answer in question was supplemented long ago to reflect the correct figure: 1,183,892.  (*See* Second Supplemental Response to Interrogatory No. 3, attached hereto as Exhibit A).  Plaintiff herself cited this figure in her motion for class certification.  (Dkt. No. 43-6 at 6).

[2]  Note that the answers to interrogatories reference collection of 22,863 returned-check fees in Maine. The larger number is due to the much longer timeframe of the interrogatory in question, which reached back to March 2005.  (*See* Exh. A, Ans. to Int. No. 1).

nationwide, there were 192,294 RECR3s sent out nationwide.  (*Id.* at ¶ 3). In other words, in that seventeen-month period, the vast majority of those who paid a draft for a returned-check fee did *not* have a RECR3 sent to them – only about 13% of the returned-check fee collections in Maine,  and only about 16% of the returned-check fee collections in the U.S., also involved the sending of a RECR3 letter.

### B.   A Nationwide Class 1 Comprises an Estimated 170,000 members as of August 2011.

Not every recipient of a RECR3 is a class member.  In order for a recipient to be a class member, the RECR3 must concern a consumer debt, not a business debt, so non-natural persons receiving RECR3s need to be excluded.  Of the 845 RECR3s sent in Maine, only 748, or approximately 88.5%, possibly concern consumer debts.   (*See* Exh. A, Ans. to Int. No. 7). If the same ratio held nationwide, then a nationwide Class 1 would comprise 170,220 members (88.5% of the 192,294 RECR3s sent nationwide).

### C.   Class 2 Substantially Overlaps Class 1 and Comprises an Estimated 122,000 Members as of August 2011.

Class 2 is a subset – a very large subset, but a subset – of Class 1.  It is all those who not only received a RECR3 on a consumer debt but also paid funds within 30 days in connection with the debt at issue in that RECR3.  In Maine, Class 2 comprises approximately 72% of the Maine members of Class 1.  Of the 748 Class 1 RECR3 recipients, 538 of them had funds collected within 30 days of the RECR3.  If the same ratio held nationwide, then a nationwide Class 2 would comprise 122,431 members (170,220 nationwide Class 1 members, multiplied by the 538/748 ratio of Maine Class 2 to Maine Class 1).[3]

---

[3] Plaintiffs requested counts of individuals who had funds collected within 30 days of receiving a RECR3, on a Maine-only (Interrogatory 9) and a nationwide (Interrogatory 11) basis.  Defendants provided a precise count (538) for the Maine-only Interrogatory 9, and objected to the burden of providing a precise nationwide count in response to Interrogatory 11.  In the Rule 30(b)(6) deposition of Defendants, Defendants explained that manual processes need to be used to determine how many of a given group of RECR3 letters went to individuals rather than to

It would be astounding indeed if a nationwide class were almost 1800 times the size of a Maine class, as Plaintiff has suggested Class 1 would be.[4] Plaintiff knows this. At Plaintiff's request, Defendants' Rule 30(b)(6) deponent provided a rough estimate at deposition that a nationwide group of RECR3 recipients would be approximately 200 times the size of a Maine group of such people (Schramek Dep. at 80:2-12). (Notably, the nationwide number of returned-check fee collections is 183 times the Maine number, and the nationwide number of RECR3s sent (consumer and non-consumer) is approximately 227 times the Maine number.) Indeed, Plaintiff adopted that multiple of 200 repeatedly in her Motion for Class certification, estimating that Class 2 on a nationwide basis consists of 107,600 consumers. (*See* Dkt. No. 43 at 3, 14, 26). Plaintiff furnishes no reason for her now suggesting to the Court that a nationwide Class 1 is not 200 times larger than its Maine-only counterpart, but that it is almost 1800 times larger. That proposition has no support in the record or in common sense. It results solely from Plaintiff's error in presuming that every person from whom a service-fee is collected receives a RECR3.

Against this background, Plaintiff's claim that a nationwide Class 1 would impose on her an unwanted burden of representing many more members than she anticipated rings hollow. Plaintiff already represents approximately 120,000 people due to the nationwide certification of Class 2. While the nationwide certification of Class 1 would add to those rolls, it would not qualitatively change the burden Plaintiff has asked to take on in representing Class 2.

Similarly, the Court should not credit Plaintiff's late suggestion that Class 1 would be "unmanageable." Plaintiff previously argued to the Court that Class 2, comprising by her estimate 107,600 members, is manageable – and those members all claim entitlement to

---

businesses and how many of those recipients also had some collection of funds made within 30 days of that RECR3 (*See* Dep. of Clinton Schramek at 58:5-59:4, 77:15-80:12, attached as Exhibit C).

[4] According to the U.S. Census Bureau, the population of the United States in 2010 (308,745,538) was approximately 232 times the size of the population of Maine (1,328,361). *See* http://quickfacts.census.gov/qfd/states/23000.html.

actual damages.  The slightly larger Class 1 – seeking statutory damages only – cannot be unmanageable for trial purposes if Plaintiff was correct that Class 2 is manageable.

Plaintiff's claim of "dilution" of the statutory cap similarly rings hollow.  Class 1 members do not face meaningfully more dilution from a nationwide Class 1 than they already face due to the size of the nationwide Class 2.  The FDCPA damages cap applies to the civil action as a whole, not to individual theories of recovery or claims of violation.  15 U.S.C. § 1692k(a)(2)(B).  Statutory damages are recoverable even by consumers who claim actual damages, like those in Class 2.  *Id.* § 1692k(a)(1) and (a)(2)(B).  In other words, a single cap will apply to the statutory damages claims of the members of both Class 2 and Class 1, regardless whether Class 1 is nationwide in scope.  The 748 current Maine members of Class 1 already face the risk of their recovery being "diluted" by sharing the available statutory damages with 120,000 or more members of Class 2.  Any additional "dilution" by adding fewer than 50,000 new members to a nationwide Class 1 will not make a material difference in any individual class member's recovery.

D. **Updating the Foregoing Figures for the Passage of Time Since August 2011 Will Not Change the Analysis.**

As Plaintiff rightly notes, the foregoing figures have continued to grow since they were counted in August 2011.  Defendants will revise them once the geographic and temporal parameters of the classes are determined.  The issue now is not whether the figures of 748 (Maine Class 1 members) and 538 (Maine Class 2 members) are precisely correct.  The important point is that the Maine figures show there is a substantial overlap – over 70% – between Class 1 and Class 2 in the same geographical area, and the class sizes in this case are nowhere near over 1 million, as Plaintiff contends.  Assuming the above figures might nearly have doubled by October 2012 (an additional 14 months added to the original 17-month period of March 2010 to August 2011), Plaintiff will be representing nearly 250,000 members of Class 2 even before taking into account the size of Class 1, and defining Class 1 as nationwide in scope will not materially add to her burden.

II.     **PLAINTIFF OMITS A KEY DISTINCTION FROM HER DESCRIPTION OF THE *MACE* LINE OF CASES.**

Defendants already have discussed in their opening memorandum the *Mace* line of cases on which Plaintiff seeks to rely.  As Defendants pointed out, that line is distinguishable, in part because such cases generally do not involve – as this case does – the problem of serial class actions filed to evade the statutory cap.   In quoting from the case law, Plaintiff specifically elides this very point from authority she quotes.  The paragraphs Plaintiff quotes, at pages 6 and 7 of her Opposition, from *Lewis v. ARS Nat. Services, Inc.*, 2011 WL 3903092 (M.D. Ala. Sept. 6, 2011), conclude with the following language, which Plaintiff omitted:

> In addition, the defendants have presented no evidence
> showing that they are currently subject to serial lawsuits based
> on the privacy notice at issue. The court declines to force Lewis
> to broaden her proposed class based on an unsupported fear.

*Id.* at \*7.  This language echoes the Seventh Circuit's suggestion in *Mace* that the court might have ruled differently and required nationwide certification of the FDCPA class if it had been presented with multiple or serial class actions.  Plaintiff's inexplicable omission of this important point of distinction in *Lewis* only underscores that *Mace* and its progeny do not preclude the exercise of this Court's broad discretion to define Class 1 as nationwide.

### CONCLUSION

For all of the above reasons, and for the reasons expressed in Defendants' earlier Memorandum, this Court should define Class 1 as nationwide in scope.

Dated:  October 29, 2012

/s/ Clifford H. Ruprecht

PIERCE ATWOOD LLP

| Donald R. Frederico | Clifford H. Ruprecht |
|---|---|
| 100 Summer Street | Merrill's Wharf |
| Suite 2250 | 254 Commercial Street |
| Boston, MA 02110 | Portland, ME 04101 |
| dfrederico@pierceatwood.com | cruprecht@pierceatwood.com |
| 617-488-8100 | 207-791-1100 |

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on this day I caused the attached Reply to Plaintiff's Opposition to Defendants'
Motion to Expand Class to be filed with the Clerk of the Court using the Court's CM/ECF
system, which will effect service on all registered counsel of record.

Dated:  October 29, 2012.


       /s/  Clifford H. Ruprecht

Clifford H. Ruprecht

PIERCE ATWOOD LLP
Merrill's Wharf
254 Commercial Street
Portland, ME 04101
(207) 791-1100
cruprecht@pierceatwood.com

*Counsel for Defendants*